**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **MIDDLE GEORGIA VASCULAR SURGERY CENTER L.L.C.,** | : | **Chapter 11 Case No. 26-51113-RMM** |
| | : | |
| | : | |
| **Debtor.** | : | |
| | : | |

**MOTION FOR ORDER AUTHORIZING PAYMENT OF WAGES, SALARIES, AND OTHER EMPLOYEE BENEFITS AND PAYMENT OF RELATED TAXES AND WITHHOLDINGS**

COMES NOW Middle Georgia Vascular Surgery Center L.L.C. ("**Debtor**"), a Debtor and Debtor-in-Possession in the above-captioned Chapter 11 case, by and through its counsel of record, and files this *Motion for Order Authorizing Payment of Wages, Salaries, and other Employee Benefits and Payment of Related Taxes and Withholdings* (the "**Motion**") and, in support, respectfully shows this Court as follows:

**JURISDICTION AND VENUE**

1. Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 1, 2026.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

3. The statutory predicates for the relief requested herein are Section 105(a) and 363(b) of the Bankruptcy Code.

**BACKGROUND**

4. Debtor, is in the business of vascular medical practice (collectively, the

"**Business**").

5. Debtor continues to operate its business as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6. As of the date of this filing, no official committee of unsecured creditors has been appointed in the case, and no request has been made for the appointment of a trustee or examiner.

**The Employee Obligations**

7. As of the Petition Date, Debtor employed five people (collectively, the "**Employees**"). One employee is employed on a full-time salaried basis, and one is employed on a full-time hourly basis. One employee is employed on a part-time salaried basis, and two employees are employed on a part-time hourly basis.

8. Because Debtor intends to continue its day-to-day operations during the pendency of this case, the Employees are vital to its continued operations. By this Motion, Debtor seeks authority to pay certain wages, compensation, and other benefits as more particularly described below (the "**Employee Obligations**") that accrued prior to and during the pendency of this case and to continue at this time its practice, programs, and policies with respect to the Employees, as such practices, programs, and policies were in effect as of the Petition Date.

9. Even though Debtor has incurred certain Employee Obligations prior to the Petition Date, certain of the Employee Obligations will become due and payable in the ordinary course of the Debtor's businesses on and after the Petition Date. The Employee Obligations include, without limitation: (i) wages, salaries, commissions, and other compensation; (ii) payroll taxes (state and federal); (iii) vacation programs; (iv) qualified 401(k) plan obligations; (v) health and welfare benefit; (vi) dental insurance; and (vii) vision insurance. Subject to Debtor revising

the below descriptions and calculations more definitively in preparation for the hearing, the Employee Obligations are more specifically described as follows:

- *Wages, salaries, and other compensation*. These obligations consist of pre-petition wages, salaries, commissions, and withholding taxes owed to the Employees (the "**Payroll Obligations**"). Debtor pays payroll biweekly for salaried and hourly Employees, typically on Friday. The average biweekly gross amount of the Payroll Obligations is approximately $10,350.00. This gross amount includes certain deductions such as payroll taxes but excludes certain benefit deductions that are described separately below, 401(k) contributions, and health insurance premiums. As of the Petition Date, Debtor approximately $9,113.53 in Payroll Obligations.

- *Payroll Taxes*. As of the Petition Date, Debtor owed payroll taxes in connection with the Payroll Obligations.

- *Unemployment taxes*. Debtor also pays certain state and federal unemployment taxes.

- *Vacation, sick leave and holiday programs*. These obligations consist of time off for vacation, sick leave, and company holidays. Employees also receive paid time off ("**PTO**"), which includes vacation and sick leave. Debtor seeks authority to continue its PTO accrual program and to honor any earned, but unused PTO that accrued prepetition.

- *401(k) Plan Obligations*. Debtor maintains a 401(k) plan, under which Employees may defer a portion of their salary. Beginning on their one-year anniversary of employment, employees can contribute any portion of their annual pay (up to the annual maximum deferral amount permitted by law). Employee contributions to 401(k) are withheld from each employee's bi-weekly payroll and remitted by Debtor. Debtor matches employee contributions. The average bi-weekly 401(k) contributions are $247.00.

- *Expense Reimbursements.* Debtor may reimburse certain of its Employees and Officers for certain expenses incurred in connection with Employees' work, including travel expenses.

- *Health and Welfare Benefits*. Debtor provides several health and welfare benefit plans (health, dental, vision, critical illness, etc.) for the Employees, including insurance plans relating to medical, health, prescription, visions, and dental. Debtor estimates that as of the Petition Date, the outstanding balances due for health and welfare benefits totaled $1,747.76.

## RELIEF REQUESTED

10. By this Motion, Debtor seeks authority to pay the Employee Obligations that become payable during the pendency of this case and continue its practice, programs, and

policies with respect to the Employees, as such practices, programs, and policies were in effect as of the Petition Date. Furthermore, because it is difficult for Debtor to determine with precision the accrued pre-petition amount for many of the Employee Obligations, to the extent that Debtor subsequently determines that there are any additional outstanding Employee Obligations related to the programs and policies described herein, Debtor requests authority to pay such pre-petition amounts. Debtor requests that it be authorized to pay any cost or penalty incurred by any recipient of Employee Obligations in the event that a check issued by Debtor for payment of the Employee Obligations is inadvertently not honored because of the filing of the Debtor's bankruptcy case.

**BASIS FOR RELIEF**

11. Pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, Employees' claims for wages, salaries, commission, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date, and claims against Debtor for contributions to employee benefit plans arising from services rendered within 180 days before the Petition Date, are afforded unsecured priority status to the extent claims do not exceed the statutory cap, as adjusted for inflation. 11 U.S.C. §§ 507(a)(4) and (5). Here, there are no employee obligations that are greater than the cap.

12. Pursuant to Section 105(a) of the Bankruptcy Code, a bankruptcy court has broad authority to enforce the provisions of the Bankruptcy Code either under the specific statutory language of the Bankruptcy Code or under equitable doctrines.

13. Moreover, courts have authorized debtors to pay pre-petition amounts pursuant to Section 363(b) when sound business justification exists and the payments are necessary to the bankruptcy process. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see*

*also Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987). Additionally, courts have found such relief is not limited to the payment of employee benefits.

14. Indeed, "Congress's [purpose in enacting § 507(a)(4) and (5)] has constantly been to enable employees displaced by bankruptcy to secure, with some promptness, the money directly due to them in back wages, and thus to alleviate in some degree the hardship that unemployment usually brings to workers and their families." *In re Hutchison*, 223 B.R. 586, 587 (Bankr. M.D. Fla. 1998) (citing *U.S. v. Embassy Restaurant, Inc*., 359 U.S. 29, 32 (1959)) (primary alteration in original; code subsection cite updated to reflect 2005 amendment).

15. In addition, because prepetition wage claims and benefits are subject to fourth priority as provided in Section 507(a)(4) and (5) of the Bankruptcy Code, they will almost always be paid except in the most dire circumstances. *See In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998).

16. Debtor filed this case to reorganize its businesses to maximize value for its estate and creditors through the continued operation of the business.

17. One of the keys to Debtor's post-petition operations and its goal for a successful reorganization is to maintain their current employees - individuals who are intimately familiar with Debtor's business and who have the experience and knowledge necessary to continue the day-to-day business of the company efficiently. This adds great value to Debtor. Debtor believes that retaining these employees is critical to its post-petition operations going forward.

18. To retain the loyalty and continued services of the hourly, salaried, and commissioned employees, it is necessary to ensure that their payroll checks and related Employee Obligations be issued and honored and that any amounts which accrued pre-petition

be paid in the ordinary course of Debtor's business.

19. Accordingly, Debtor requests that it be authorized to pay employee wages, compensation, and other benefits as more particularly described herein.

Respectfully submitted this 2nd day of July, 2026.

**STONE & BAXTER, LLP**
By:

*/s/ David L. Bury, Jr.*
David L. Bury, Jr.
Georgia Bar No. 133066
E. Tate Crymes
Georgia Bar No. 48618
dbury@stoneansbaxter.com
tcrymes@stoneandbaxter.com

Proposed Counsel for Debtor

577 Third Street
Macon, Georgia 31201
478.750.9898
478.750.9899 (fax)

G:\CLIENTS\Middle Georgia Vascular Surgery Center and Vein Solutions, LLC\Middle Georgia Vascular Surgery Center v. Ch. 11\First Day Motions\Expedited\4. Employee Benefits (for upload 07.02.26).doc