**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **MIDDLE GEORGIA VASCULAR SURGERY CENTER L.L.C.,** | : | **Chapter 11 Case No. 26-51113-RMM** |
| | : | |
| | : | |
| **Debtor.** | : | |
| | : | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING DEBTOR TO PAY CERTAIN PRE-PETITION CLAIMS OF CRITICAL VENDORS AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

Middle Georgia Vascular Surgery Center L.L.C. ("**MGVSC**" or "**Debtor**"), a debtor and debtor-in-possession in the above-captioned case, seeks entry of an order, substantially in the form attached as **Exhibit A**, (a) authorizing Debtor to pay certain pre-petition claims of critical vendors in accordance with the procedures proposed in this motion and (b) authorizing financial institutions to honor all related checks and electronic payment requests submitted in connection with such payments. Debtor respectfully shows the following:

**Jurisdiction and Venue**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for relief requested herein are Sections 105(a), 363, 507(a)(8), 1107(a) and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

**Background**

4. Debtor is in the business of providing vascular medical care and related medical services

(the "**Business**").

5. On July 1, 2026 (the "**Petition Date**"), Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Debtor continues to operate its businesses and manage its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. No trustee, examiner, or committee has been appointed in this case.

## Critical Vendors

7. In the ordinary course of business, Debtor relies on certain vendors for the delivery of services and materials that are critical to the continued and uninterrupted operation of Debtor's business (collectively, the "**Critical Vendors**"). The Critical Vendors generally supply services, supplies, and materials that are essential to Debtor's ongoing business and ability to provide medical services.

8. To identify Critical Vendors, Debtor spent a significant amount of time carefully reviewing its accounts payable and pre-petition vendor lists to identify those creditors that are most critical to its operations. To determine whether a particular vendor was "critical," Debtor used the following criteria: (a) whether the vendor in question is a "sole-source" or "limited source" provider; (b) whether Debtor receive advantageous pricing, credit, or other terms from the vendor such that replacing the vendor would result in significantly higher costs to Debtor; (c) whether Debtor could successfully purchase goods or services from another source and receive such goods or services on a timely basis if the vendor refused to provide goods or services; (d) the overall impact on Debtor's operations if the vendor ceased or delayed shipments or services; and (e) whether an agreement exists that would compel the vendor to maintain its commercial relationship with Debtor and, if so, whether the enforcement thereof could be accomplished in a timely and cost-efficient manner without unduly disrupting Debtor's businesses.

9. As a result, Debtor has determined that certain suppliers and vendors are critical to the continuation of its operations during this case. Each Critical Vendor identified by Debtor provides a raw source, finished material, or vital service that, if Debtor was no longer able to procure, would significantly and adversely impact the ability of the Debtor's business to meet the needs of its customers and patients. It is critical that Debtor be able to continue to maintain its ongoing business relationships with the suppliers so as not to interrupt critical supply lines.

10. To preserve Debtor's going concern value as it transitions into this case, Debtor believes it must be able to secure an uninterrupted supply of necessary materials and services from the Critical Vendors so that it can continue operations as usual and seamlessly provide products to its customers and patients. Securing such an uninterrupted supply of necessary materials and services will require Debtor to satisfy certain fixed, liquidated, and undisputed pre-petition obligations owing to the Critical Vendors (collectively, the "**Critical Vendor Claims**"). Absent payment of the Critical Vendor Claims, it is likely that the Critical Vendors will (a) refuse to deliver materials and services to Debtor or (b) refuse to deliver materials and services to Debtor on reasonable credit terms, thereby effectively refusing to do business with Debtor. The failure of any of the Critical Vendors to continue providing materials, supplies, or services to Debtor will seriously and irreparably harm Debtor's ability to satisfy its obligations to—and impair Debtor's relationships with—its customers and patients.

**Payment of Critical Vendor Claims**

11. Debtor has carefully considered whether payments on account of the Critical Vendor Claims are necessary and whether such payments will ensure that Debtor will continue to receive the essential materials, supplies, and services provided by the Critical Vendors. And, Debtor also considered whether it will continue to have access to adequate trade credit from the Critical Vendors on a postpetition basis. Despite the critical need for the receipt of essential

materials, services, and supplies, Debtor has historically sought to bargain with its vendors to achieve the lowest price, the best quality, and the most favorable payment terms possible for each necessary product or service. Debtor recognizes that efficiency is critical to achieving profitability. To that end, Debtor has developed valued relationships with several suppliers who have met the Debtor's standards for price, service, quality and payment terms, and it hopes to maintain and improve upon those vendor relationships on a post-petition basis.

12. Notwithstanding Debtor's valued relationships with the Critical Vendors, Debtor recognize that Critical Vendors may, despite the protections of administrative priority status, refuse to provide goods or services to Debtor on a post-petition basis if Debtor does not pay all or part of the Critical Vendors' pre-petition claims. Accordingly, Debtor believes that payment of some Critical Vendor Claims will be necessary to preserve operations and successfully reorganize. The need for flexibility to pay Critical Vendor Claims is particularly important in the period immediately following the Petition Date. During this period, while Debtor is focused on stabilizing the business and transitioning into Chapter 11, Critical Vendors may deny provision of materials, services, or supplies in an effort to coerce payment.

13. Based on its books and records, Debtor estimates it has relationships with more than 50 vendors, only a small fraction of which Debtor is seeking authority to pay by this motion. Of Debtor's estimated more than $2.15 million in unsecured claims, Debtor is seeking authority to pay up to $143,117.54 (the "**Critical Vendor Cap**"),[1] or less than 7% of outstanding unsecured claims, on account of the Critical Vendor Claims. The Critical Vendor Cap represents the maximum amount that Debtor has determined at this time may be necessary to ensure the continued supply of critical materials, supplies, and services by the Critical Vendors to Debtor. To

[1] Two of the listed critical vendors appear to be zero balance vendors, such that critical vendor status might be unnecessary. Debtor will confirm the balances before the hearing on this Motion.

that end, Debtor has identified a pre-authorized list of Critical Vendors whose claims may be paid. A true and correct copy of that list is attached as **Exhibit B**. Additionally, Debtor recognizes that there may be other vendors which it has not yet identified that it may determine are critical to the continued operation of its business. Therefore, and consistent with the requirements of the Bankruptcy Code and applicable case law, Debtor will make payments only upon determining that such payments are actually necessary to preserve the value of Debtor's estate.

**Terms and Conditions for Payment of Critical Vendor Claims**

14. Subject to the Court's approval, Debtor intends to pay the Critical Vendor Claims only to the extent necessary to preserve its business.

15. Moreover, Debtor will use commercially reasonable efforts to condition payment of Critical Vendor Claims upon each Critical Vendor's agreement to continue supplying materials, services, or supplies on "Customary Trade Terms."[2]

16. For those Critical Vendors that have agreed to provide goods or services to Debtor on terms different from its Customary Trade Terms, Debtor reserves the right to seek written acknowledgment of such terms from such vendor on a case-by-case basis.

17. If a Critical Vendor refuses to supply goods or services to Debtor on the Customary Trade Terms (or on such other terms that are mutually agreed to by Debtor and such Critical Vendor) following payment of its Critical Vendor Claim, Debtor seeks authority to, in its discretion and without further order of the Court, declare that any payment made to such Critical Vendor on account of its Critical Vendor Claim, is deemed to have been payment of then outstanding

[2] As used herein, "**Customary Trade Terms**" are defined as the normal and customary trade terms, practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability and other applicable terms and programs) that were most favorable to Debtor and in effect between the applicable Critical Vendor and Debtor on a historical basis or such other trade terms, practices and programs that are at least as favorable to Debtor as those that were in effect prior to the Petition Date.

postpetition claims, if any, of such Critical Vendor.

18. If Debtor exercises the rights set forth in the preceding paragraph, Debtor requests that the Critical Vendor against whom Debtor exercises such rights be required to immediately return to Debtor any payments made on account of the Critical Vendor Claim to the extent that the aggregate amount of such payments exceeds the post-petition amounts then owed to such Critical Vendor, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims or other defenses. In essence, Debtor seeks to return the parties to their respective positions immediately prior to entry of any order approving this motion.

19. Attached as **Exhibit B** to this Motion is a matrix summarizing (a) the name of each Critical Vendor, (b) the estimated amount owed to each Critical Vendor as a Critical Vendor Claim (if known at the time of this filing), and (c) the services, materials, and supplies provided by each. Debtor shall maintain and update this matrix, as necessary, to reflect payments made to each Critical Vendor on behalf of such Critical Vendor's Critical Vendor Claim. Debtor proposes to provide to (a) the Office of the United States Trustee, (b) counsel to any official committee of unsecured creditors, and any other party as directed by the Court, upon agreement as to an appropriate confidentiality arrangement, reasonable and timely access to the matrix described above to enable such parties to monitor payments made, obligations satisfied and other actions taken with respect to the Critical Vendors.

## Relief Requested

20. By this motion, Debtor seeks entry of an order, pursuant to Sections 105(a), 363, 507(a)(8), 1107(a) and 1108 of the Bankruptcy Code, (a) authorizing, but not directing, Debtor, in its sole discretion and subject to the terms and conditions set forth herein, to pay some or all of the prepetition Critical Vendor Claims up to an aggregate amount of $143,117.54 and (b) authorizing the applicable banks and other financial institutions to receive, honor, process, and pay any and

all checks presented for payment and all electronic payment requests made by Debtor related to the payment of the Critical Vendor Claims, whether such checks were presented or electronic payment requests were submitted before or after the Petition Date.

## Basis for Relief

### A. Ample Support Exists to Authorize Debtor to Pay the Critical Vendor Claims

#### (i) Payment of the Critical Vendor Claims is Authorized under Sections 105(a), 363, 1107(a) and 1108 of the Bankruptcy Code and the Business Judgment Rule and the Doctrine of Necessity.

21. Under Section 363(b), a court may authorize a debtor to pay certain pre-petition claims. *See In re MPC Computers, LLC,* No. 08-12667 (Bankr. D. Del. Nov. 10, 2008) (authorizing, pursuant to Section 363, the payment of pre-petition claims of suppliers); *In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (referring to the court's earlier order authorizing payment of pre-petition wages pursuant to Section 363(b) of the Bankruptcy Code); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on Section 363 of the Bankruptcy Code to allow a contractor to pay pre-petition claims of suppliers who were potential lien claimants because the payments were necessary for general contractor to release funds owed to debtors). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id.*; *see also Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063 (2d Cir. 1983).

22. Further, Sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor-in-possession to continue to operate its business. Indeed, a debtor-in-possession operating a business under Section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and pre-petition claims may be paid if necessary to perform the debtor's duty. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty

can only be fulfilled by the preplan satisfaction of a prepetition claim."). The *CoServ* court specifically noted that the pre-plan satisfaction of pre-petition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* In reaching its conclusion, the court provided a three-prong test for determining whether a pre-plan payment on account of a pre-petition claim (i.e., a critical vendor payment) was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

23. Payment of the Critical Vendor Claims meets each element of the *CoServ* court's standard. Each Critical Vendor's goods or services are vital to the continued operation of Debtor's business, which in turn is essential to maximizing the value of its estate. As described above, the Critical Vendors include only those vendors that may refuse to provide goods or services absent payment of their pre-petition claims, risking interruption of Debtor's operations. The harm that would stem from the failure of any Critical Vendor to provide goods or services in a timely manner is grossly disproportionate to the amount of the Critical Vendor Claim of such Critical Vendor.

24. Finally, with respect to each Critical Vendor, Debtor has examined other practical or legal alternatives to payment of such Critical Vendor's claim, and has determined that there is no practical or legal alternative to payment of the Critical Vendor Claim without significant disruption of Debtor's operations or finances. Therefore, Debtor can meet its fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code only by payment of the Critical Vendor Claims.

25. To supplement these explicit powers, Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Numerous courts across the country have recognized that payments to pre-petition creditors are appropriate pursuant to Section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation and preservation of the debtor's business. *See*, *e.g.* *In re Southwest Georgia Ethanol, LLC*, Case No. 11-10145, ECF No. 179 (Bankr. M.D. Ga. 2011, Walker, J.) (permitting debtor to pay certain pre-petition corn suppliers and trade vendors); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court could authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."). The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

26. Taken together, the nature of the pre-petition claims of the Critical Vendors, the substantial harm to Debtor's businesses that would be caused if those obligations are not honored and the related potential for loss of value in Debtor's estate, all lead to the conclusion that the pre-petition claims of the Critical Vendors fall well within the scope of obligations whose payment may be authorized pursuant to the doctrine of necessity and the other legal theories set forth above. Indeed, Debtor only seeks to pay the claims of Critical Vendors where non-payment would likely lead to the

interruption of the delivery of materials, services, or supplies. To that end, the relief requested herein is crafted to minimize the number and amount of pre-petition claims that are paid and to maximize the value that Debtor gains from such payments. Thus, Debtor submits that the relief requested is narrowly tailored to facilitate the Chapter 11 reorganization process.

27. Finding a replacement provider for the materials, services, and supplies provided by the Critical Vendors would be an arduous, lengthy, expensive, and, in some cases, impossible process and would be detrimental to Debtor's estate. As described in more detail above, to the extent that certain of the Critical Vendors provide material, services, or supplies that are uniquely tailored to the needs of Debtor and specific jobs, replacement of those providers would involve a significant and costly delay in the delivery of Debtor's products to its customers. Additionally, Debtor's management may need to shift time and resources away from business stabilization in order to seek out an alternative provider of goods or services. In addition, Debtor may be forced to pay a premium (or to incur secured debt) to obtain any replacement or may be unable to obtain replacements because of the perceived risk of doing business in Chapter 11.

28. Moreover, Debtor anticipates that maintaining its relationships with the Critical Vendors will enhance access to liquidity both during and after this Chapter 11 case to the benefit of the estate and creditors. Indeed, the purchase of services and materials on credit (as Debtor was able to do pre-petition) preserves working capital and liquidity, thereby enabling Debtor to compete effectively and maintain market strength. In many instances, the alternative is cash-on-delivery or advance payment terms, which would force Debtor to allocate a larger percentage of its operating budgets to payment for essential supplies and services. Maintaining favorable terms, trade credit, and continuity of quality services and materials on an uninterrupted basis is vital to the continued, uninterrupted operation of Debtor's business and, therefore, is in the best interests of all of Debtor's creditors.

29. The proposed payments to Critical Vendors, even if the maximum authorized amount is

paid, would represent less than 7% of the total amount of the estimated claims in this case. These amounts represent Debtor's best estimate as to how much must be paid to continue the supply of critical services, materials, and supplies from vendors and suppliers. As discussed above, Debtor hopes to pay far less than the requested amount and have narrowly tailored the relief requested herein to afford itself the flexibility to negotiate with the Critical Vendors.

**(ii) The Court Should Authorize Financial Institutions to Honor Checks and Transfer Requests Regarding Critical Vendor Claims**

30. Debtor represents that it has sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. As a result of the commencement of this case and in the absence of an order of the Court providing otherwise, Debtor's checks, wire transfers, and electronic fund transfers in respect of the Critical Vendor Claims may be dishonored or rejected by financial institutions. Under Debtor's cash management system, Debtor can readily identify checks or transfers relating directly to payment of the Critical Vendor Claims. Accordingly, Debtor believes that pre-petition checks and transfers other than those for the Critical Vendor Claims will not be honored inadvertently. Debtor submits that any financial institution should be authorized to rely on the representations of Debtor with respect to whether any check drawn or transfer request issued by Debtor prior to the Commencement Date should be honored pursuant to this motion.

**The Requirements of Bankruptcy Rule 6003 are Satisfied**

31. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to use property of the estate within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of

"immediate and irreparable harm" in relation to Bankruptcy Rule 4001). As described above, prompt payment of the Critical Vendor Claims is necessary to avoid the immediate and irreparable harm that could result from the Critical Vendors depriving Debtor of services and materials that are essential to its business. Accordingly, Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support the relief requested on the terms described herein.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

32. Debtor requests the Court waive the notice requirements of Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h).

**Reservation of Rights**

33. Nothing contained in this motion or any actions taken by Debtor pursuant to relief granted in relation to this motion is intended or should be construed as: (a) an admission as to the validity of any particular claim against Debtor; (b) a waiver of Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to Section 365 of the Bankruptcy Code; or (f) a waiver or limitation of Debtor's rights under the Bankruptcy Code or any other applicable law. Debtor expressly reserves all of its rights with respect to the foregoing matters.

**Notice**

34. Debtor will serve this Motion as directed by the Court.

WHEREFORE Debtor respectfully request that the Court (a) enter an order, substantially in the form attached as **Exhibit A** and (b) granting such other relief as the Court deems appropriate.

Respectfully submitted this 2nd day of July, 2026.

**STONE & BAXTER, LLP**
By:

*/s/ David L. Bury, Jr.*

David L. Bury, Jr.
Georgia Bar No. 133066
E. Tate Crymes
Georgia Bar No. 48618
dbury@stoneansbaxter.com
tcrymes@stoneandbaxter.com

577 Third Street
Macon, Georgia 31201
478.750.9898
478.750.9899 (fax)

Proposed Counsel for Debtor

# EXHIBIT A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **MIDDLE GEORGIA VASCULAR SURGERY CENTER L.L.C.,** | : | **Chapter 11 Case No. 26-51113-RMM** |
| | : | |
| | : | |
| **Debtor.** | : | |
| | : | |

**ORDER ON DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING DEBTOR TO PAY CERTAIN PRE-PETITION CLAIMS OF CRITICAL VENDORS AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

Debtor having moved for an Order, pursuant to 11 U.S.C. §§ 105(a) and 1107(a), for authority to establish Critical Vendor Payment Procedures (Dkt. No. ____) (the "**Motion**"). The Motion having come on for an expedited hearing on July 9, 2026 (the "**Hearing**"); the Court having heard from Debtor and other interested parties at the Hearing; and the Court finding that (a) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding, (c) notice of the Motion was sufficient and no further notice is necessary, (d) the relief requested in the Motion is in the best interest of Debtor, its estate, and its creditors, (e) good and sufficient cause exist for such relief; and (f) upon the record herein and after due deliberation, good and sufficient cause appearing, it is therefore

ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is GRANTED.

2. Debtor is authorized, but not directed, to pay Critical Vendor Claims.

3. Notwithstanding anything to the contrary in this Order, the relief herein is granted solely to the extent that it is consistent with any order authorizing the continued use of "cash collateral."

4. Debtor is authorized, but not directed, to make payments to Critical Vendors an aggregate amount not to exceed $143,117.54, which Critical Vendors and the amounts that may be paid to each Critical Vendor are as described on Exhibit B attached to the Motion.

5. As a prerequisite to payment of any Critical Vendor Claim, Debtor will use reasonable efforts to require Critical Vendors to agree to continue transacting business with Debtor post-petition on Customary Trade Terms (as defined in the Motion) for such duration of time as agreed to by Debtor and the particular Critical Vendor, unless otherwise agreed to by Debtor and the particular Critical Vendor.

6. In return for receiving payment on account of any Critical Vendor Claim, the Critical Vendors, through the endorsement of any check for payment or other written acknowledgement, shall be deemed to have agreed to continue supplying products, supplies, or services to Debtor upon Customer Trade Terms for such duration of time as agreed to by Debtor and the particular Critical Vendor, or such other terms and conditions as are agreed to by Debtor and the particular Critical Vendor.

7. If, after receipt of payment for any Critical Vendor Claim, a Critical Vendor refuses to continue to provide products, supplies, or services upon the Customary Trade Terms as agreed to with Debtor, then Debtor may (i) declare that any payment made to such Critical

Vendor on account of its pre-petition claim shall be deemed to have been in payment of then-outstanding post-petition claims of such Critical Vendor without further order of the Court or action by any person or entity; (ii) require that the Critical Vendor immediately repay to Debtor any payment made to it on account of its pre-petition claim, without the right of any setoff, claim, provision for payment of reclamation or trust fund claim, or otherwise; and (iii) seek redress with the Court for failure to comply with Customary Trade Terms.

8. Nothing in this Order nor any action taken by Debtor in furtherance of the implementation hereof shall be deemed an approval of the assumption or rejection of any executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code.

9. Nothing in this Order shall impair the ability of Debtor or appropriate party in interest to contest any claim, or assert any right, claim, or defense related thereto.

10. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

11. The Debtor shall, within three (3) business days hereof, serve a copy of this Order on all parties that received notice of the Motion, as well as all parties that have appeared in this case and requested notice, and each Critical Vendor. Debtor shall file a certificate of service evidence such service.

**END OF DOCUMENT**

**Order Prepared and Submitted By:**

*/s/ David L. Bury, Jr.*
David L. Bury, Jr.
Georgia Bar No. 133066
Stone & Baxter, LLP
577 Third Street
Macon, Georgia 31201
478.750.9898

478.750.9899 (fax)
dbury@stoneandbaxter.com
Proposed Counsel for Debtor

# EXHIBIT B

## Critical Vendors

| **Vendor** | **Pre-Petition Claim** | **Critical Service/Material** |
|---|---|---|
| Boston Scientific | $120,027.84 | This is the only company that makes Varithena, a foam product that the Debtor must use to treat specific superficial veins in certain patients (based on their insurance guidelines/algorithm, vein size, symptoms, etc.). |
| McKessen Medical Surgical | TBD | This is the critical source for all of Debtor's medications. This might be a zero balance vendor, but Debtor is seeking critical vendor status subject to further investigation. |
| Medtronic USA, Inc. | $23,089.70 | This is the only company that makes VenaSeal, an adhesive product that Debtor must use to treat specific superficial veins in certain patients (based on their insurance guidelines/algorithm, vein size, symptoms, etc.) |
| Merit Medical Systems, Inc. | TBD | This is Debtor's critical source of mini access kits and sheaths for venous procedures. This might be a zero balance vendor, but Debtor is seeking critical vendor status subject to further investigation. |
| **Total** | **$143,117.54** | |