**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **In Re:** | : | |
| | : | **CHAPTER 11 BANKRUPTCY** |
| **MIDDLE GEORGIA VASCULAR SURGERY CENTER L.L.C.,** | : | **CASE NO.: 26-51113-RMM** |
| **Debtor.** | : | |
| **AMERIS BANK, THROUGH ITS DIVISION BALBOA CAPITAL CORPORATION,** | : | **CONTESTED MATTER** |
| **Movant,** | : | |
| **v.** | : | |
| **MIDDLE GEORGIA VASCULAR SURGERY CENTER L.L.C.,** | : | |
| **Respondents.** | : | |

## NOTICE OF HEARING

**AMERIS BANK, THROUGH ITS DIVISION BALBOA CAPITAL CORPORATION** HAS FILED DOCUMENTS WITH THE COURT SEEKING RELIEF FROM THE AUTOMATIC STAY.

**<u>YOUR RIGHTS MAY BE AFFECTED.</u> You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. <u>If you do not have an attorney, you may wish to consult one.</u> If not served with this notice in accordance with the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, a copy of the motion may be obtained upon written request to counsel for the Movant (identified below) or at the Clerk's office.**

If you do not want the court to grant *Ameris Bank, through its division Balboa Capital Corporation's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 and Waiver of 11 U.S.C. § 362(e) Rights* (the "<u>Motion</u>"), or if you want the court to consider your views on the Motion, then you or your attorney shall attend the hearing scheduled to be held on:

**October 7, at 10:30 a.m., at the U.S. Bankruptcy Court, Court Room A**
**433 Cherry Street, Macon, Georgia 31201**

**Parties should consult the Court's website (www.gamb.uscourts.gov) concerning whether the hearing will be in-person, telephonic, or virtual. Please refer to Administrative Order #145 for more guidance.**

**If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting relief.**

This Notice is sent by the undersigned pursuant to 11. U.S.C. § 523.

Dated this 28th day of August, 2026.

**MOORE, CLARKE, DuVALL & RODGERS, P.C.**

*/s/ David A. Garland*
**DAVID A. GARLAND**
Georgia State Bar No.: 005680
*Attorneys for Ameris Bank, through its division*
*Balboa Capital Corporation*
2829 Old Dawson Road (31707)
Post Office Drawer 71727
Albany, Georgia 31708-1727
Telephone: 229-888-3338
Facsimile: 229-888-1191
Email: dgarland@mcdr-law.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **In Re:**<br><br>**MIDDLE GEORGIA VASCULAR SURGERY CENTER L.L.C.,**<br><br>**Debtor.** | : | **CHAPTER 11 BANKRUPTCY**<br>**CASE NO.: 26-51113-RMM** |
| **AMERIS BANK, THROUGH ITS DIVISION BALBOA CAPITAL CORPORATION,**<br><br>**Movant,**<br><br>**v.**<br><br>**MIDDLE GEORGIA VASCULAR SURGERY CENTER L.L.C.,**<br><br>**Respondent.** | : | **CONTESTED MATTER** |

**AMERIS BANK, THROUGH ITS DIVISION BALBOA CAPITAL CORPORATION'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362 AND WAIVER OF 11 U.S.C. § 362(e) RIGHTS**

COMES NOW, Ameris Bank, through its division Balboa Capital Corporation (hereinafter "Ameris Bank") one of the creditors in the above-captioned case, and files this its *Ameris Bank, through its division Balboa Capital Corporation's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 and Waiver of 11 U.S.C. § 362(e) Rights* (hereinafter "Motion") and in support thereof shows the following:

## I. ALLEGATIONS RELATED TO JURISDICTION AND VENUE

1.

On or about July 1, 2026 (hereinafter "Petition Date"), Debtor filed its *Voluntary Petition for Non-Individuals Filing for Bankruptcy* (hereinafter "Petition") pursuant to Chapter 11 of the United States Bankruptcy Code in the U.S. Bankruptcy Court for the Middle District of Georgia, Macon Division.

2.

Since the Petition Date, Debtor has remained a Debtor-in-Possession pursuant to 11 U.S.C. § 1107 and 11 U.S.C. § 1108.

3.

Jurisdiction over this matter and over the Debtor-Respondent is proper in the United States District Court for the Middle District of Georgia, Macon Division, pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 362, and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (hereinafter "Bankruptcy Rule").

4.

Venue over this matter is proper in the United States District Court for the Middle District of Georgia, Macon Division, pursuant to 28 U.S.C. § 1409.

5.

This Motion is a contested matter pursuant to Bankruptcy Rule 4001(a) and Bankruptcy Rule 9014.

6.

This contested matter is a core proceeding which may be heard and determined by the Bankruptcy Judge presiding over the Bankruptcy Court Unit of the United States District Court for the Middle District of Georgia, Macon Division, pursuant to 28 U.S.C. § 157(b)(1), 28 U.S.C. § 157(b)(2)(A), and 28 U.S.C. § 157(b)(2)(G).

## II. ALLEGATIONS RELATED TO AMERIS BANK'S CLAIM

7.

Paragraphs 1 through 6 are hereby incorporated as if fully restated herein.

8.

As of the Petition Date, Ameris Bank held a claim against Debtor in the amount of $254,166.50, arising from the following:

a) An *Equipment Financing Agreement, Agreement # 445706-000* (hereinafter "EFA 000") executed by Debtor in favor of Ameris Bank for the purpose of financing the purchase of a Motus AZ+ Laser, Serial Number M130A1-QQ224309 (hereinafter "Laser"). Pursuant to EFA 000, Debtor granted Ameris Bank a security interest in the Laser to secure the amounts due Ameris Bank pursuant to the EFA 000 and all other debts and obligations of Debtor due to Ameris Bank;

b) A UCC-1 Financing Statement filed with Georgia Superior Court Clerks' Cooperative Authority (hereinafter "GSCCCA");

c) An Equipment Finance Agreement (hereinafter "EFA 001") executed by Debtor in favor of MMP Capital, LLC for the purpose of financing the purchase of an Emsella Workstation (Chair), Serial Number 09900B008754 / 29930B005057 (hereinafter "Workstation").

d) An *Assignment of Agreement without Recourse* executed by MMP Capital LLC in favor of Ameris Bank; and

e) A UCC-1 Financing Statement filed with GSCCCA.

True and correct copies of each of the foregoing are attached hereto as Exhibits "1" through "5".

9.

Ameris Bank accelerated the payments due on EFA 000 on June 2, 2026. The outstanding balance due pursuant to EFA 000 is calculated as the sum of the present value of the remaining payments due pursuant to EFA 000, discounted at a rate of three percent (3%) and the outstanding past due payments as of June 2, 2026, plus interest accruing at the rate of eighteen percent (18%) per annum after June 2, 2026 until July 1, 2026. As of June 2, 2026, Debtor was past due in the installment payments arising under EFA 000 in the amount of $3,423.62. The present value of the remaining future installment payments due as of June 2, 2026, discounted at the rate of three percent (3%) yielded an amount equal to $92,702.78. As of June 2, 2026, the outstanding balance of the sum of past due monthly payments and the present value of the remaining monthly payments, discounted at three percent (3%), totaled an amount

equal to $96,126.40. Starting on June 2, 2026, and continuing through July 1, 2026, interest accrued on the outstanding balance at the rate of one and eighteen percent (18%) per annum or $47.40 per diem. As of July 1, 2026, the outstanding balance due pursuant to the EFA 000 totaled $97,501.14 plus attorney's fees calculated pursuant to O.C.G.A. § 13-1-11 in the amount of $9,775.11.

10.

Ameris Bank accelerated the payments due on EFA 001 on June 2, 2026. The outstanding balance due pursuant to EFA 001 is calculated as the sum of the present value of the remaining payments due pursuant to EFA 001, discounted at a rate of three percent (3%) and the outstanding past due payments as of June 2, 2026, plus interest accruing at the rate of eighteen percent (18%) per annum after June 2, 2026 until July 1, 2026. As of June 2, 2026, Debtor was past due in the installment payments arising under EFA 001 in the amount of $3,529.76. The present value of the remaining future installment payments due as of June 2, 2026, discounted at the rate of three percent (3%) yielded an amount equal to $128,124.00. As of June 2, 2026, the outstanding balance of the sum of past due monthly payments and the present value of the remaining monthly payments, discounted at three percent (3%), totaled an amount equal to $131,683.76. Starting on June 2, 2026, and continuing through July 1, 2026, interest accrued on the outstanding balance at the rate of eighteen percent (18%) per annum or $64.93 per diem. As of July 1, 2026, the outstanding balance due pursuant to the EFA 001 totaled $133,536.59 plus attorney's fees calculated pursuant to O.C.G.A. § 13-1-11 in the amount of $13,378.66.

## III. ALLEGATIONS SUPPORTING REQUEST FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(D)(2)

11.

Paragraphs 1 through 10 are hereby incorporated as if fully restated herein.

12.

Pursuant to 11 U.S.C. § 362(d)(2), a Court should grant relief from the automatic stay if (A) the debtor does not have any equity in such property, and (B) such property is not necessary to an effective reorganization. "A creditor who shows those two elements are met is entitled to relief." *In re Bagwell*,

741 Fed. Appx. 755, 759 (11th Cir. 2018). (Citing *In re Albany Partners, Ltd*., 749 F.2d 670, 673 (11th Cir. 1984).

13.

Pursuant to 11 U.S.C. § 362(g), the party requesting relief from the automatic stay bears the burden of proof on the issue of the debtor's equity in the property, and the party opposing the relief bears the burden of proof on all other issues. "Where a party who opposes the lifting of the automatic stay imposed by § 362(a) fails to meet its burden as allocated by § 362(g), the stay should be lifted. The party opposing the motion cannot merely rest once the party seeking to have the stay lifted makes a *prima facie* showing he is entitled to relief." *In re Allstar Building Products, Inc.*, 834 F.2d 898, 900 (11th Cir. 1987).

14.

As of the Petition Date, Ameris Bank held a claim eligible to be a secured claim in the amount of $254,166.50 plus interest and attorney's fees accruing after the Petition Date to the extent of the combined values of the Laser and the Workstation (hereinafter collectively "Collateral").

15.

In *Associates Commercial Corporation v. Rash*, 520 U.S. 953; 117 S. Ct. 1879 (1997), the Court held that the method for valuing Debtor's property is based upon Debtor's intended use of the property. Debtor intends to use Ameris Bank's Collateral in its business operations. Ameris Bank's Collateral should be valued at its replacement value.

16.

The combined replacement values of the Collateral are $59,000.00.

17.

Based upon the foregoing, the Debtor does not have an equity interest in Ameris Bank's Collateral.

18.

> Once the Movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is "necessary for an effective reorganization." *See § 362(g*). What this requires is not merely a showing that

> if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the *en banc* court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." 808 F. 2d at 370-371 and NN 12-13, and cases cited therein. The cases are numerous in which § 362(d)(2) relief has been provided within less than a year from the filing of the bankruptcy petition. And while the Bankruptcy Courts demand less detailed showings during the four months in which debtor is given the exclusive right to put together a plan, *see 11 U.S.C. §§ 1121(b, (c)(2)*, even within that period, lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief.

*United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-376; 108 S. Ct. 626, 632-633; 98 L.E. 2d 740 (1988).

19.

> The Supreme Court has said that "however honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *Tennessee Publishing Co. v. American Nat'l Bank, 299 U.S. 18, 22, 81 L. Ed. 13, 57 S. Ct. 85 (1936)*. "There must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 376, 98 L. Ed. 2d 740, 108 S. Ct. 626 (1988)*. "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *In re Canal Place Ltd. Partnership,* 921 F.2d 569, 577 (5th Cir. 1991).

*In re Rosemary Brown*, 951 F.2d 564, 572 (3rd Cir. 1991).

20.

The Collateral is not being used by Debtor and is not necessary for an effective reorganization.

## IV. ALLEGATIONS SUPPORTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1).

21.

Paragraphs 1 through 20 are hereby incorporated as if fully restated herein.

22.

Upon request of a party in interest, the Court shall grant relief from the automatic stay for cause, including the lack of adequate protection of an interest in property of such party. 11 U.S.C. § 362(d)(1). Cause exists to grant Ameris Bank's Motion.

23.

> In addition to the enumerated exceptions listed in § 362(b), the bankruptcy court may also grant relief from the automatic stay, 'such as by terminating, annulling, modifying or

> conditioning such stay,' on 'request of a party in interest…for cause, including lack of adequate protection of an interest in property of such party in interest.' § 362(d)(1) (emphasis added). The term 'cause' is not defined in § 362(d)(1) or elsewhere in the Bankruptcy Code.

*In re Feingold*, 730 F.3d 1268, 1276 (11th Cir. 2013). In determining whether cause exists, the Court should look at the totality of the circumstances in each particular case. *See id.* at 1277 (citing *Baldino v. Wilson*, 116 F.3d 87, 90 (3rd Cir 1997)).

24.

Ameris Bank's collateral continues to depreciate in value due to the passage of time and due to Debtor's continued use of the collateral.

25.

Accordingly, cause exists to grant Ameris Bank relief from the automatic stay.

## V. <u>WAIVER OF 362(e) RIGHTS</u>

26.

Paragraphs 1 through 25 are hereby incorporated as if fully restated herein.

27.

Ameris Bank hereby waives the right to have the motion heard within thirty (30) days pursuant to 11 U.S.C. § 362(e).

WHEREFORE, Ameris Bank prays that this Court enter an order granting the following relief:

(a) Lift the automatic stay to allow Ameris Bank to repossess and foreclose its interest in the Collateral, to file and prosecute any proceeding necessary to repossess the Collateral and to serve all notices necessary to foreclose its security interest in the Collateral; and

(b) Grant Ameris Bank other and further relief that the Court deems equitable and just.

[Signature on Next Page]

RESPECTFULLY SUBMITTED, this 28th day of August, 2026

**MOORE, CLARKE, DuVALL & RODGERS, P.C.**

/s/ *David A. Garland*
**DAVID A. GARLAND**
Georgia State Bar No.: 005680
*Attorneys for Ameris Bank, through its division*
*Balboa Capital Corporation*
2829 Old Dawson Road (31707)
Post Office Drawer 71727
Albany, Georgia 31707-1727
Telephone: 229-888-3338
Facsimile: 229-888-1191
Email: dgarland@mcdr-law.com

# Exhibit "1"

BALBOA CAPITAL
A DIVISION OF AMERIS BANK

# EQUIPMENT FINANCING AGREEMENT ("Agreement")

**Agreement #** 445706-000

## DEBTOR INFORMATION

| Debtor Name: ("you" or "your") | Debtor Address: | Collateral Location: (If different from Debtor Address) |
|---|---|---|
| Middle Georgia Vascular Surgery Center L.L.C. | 1025 N Houston Rd<br>Warner Robins, GA 31093 | 1025 N Houston Rd<br>Warner Robins, GA 31093 |
| **Debtor Phone #:** | **Federal Tax ID #:** [redacted]5917 | |

## PAYMENT AND TERMS

| Full Description of Collateral (Include Make Model, Serial Numbers) | Collateral Cost: | Initial Payment (Debtor requests that this amount be electronically debited) |
|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | $149,693.00<br>**Initial Payment Date:** 04/13/2023 | SECURITY DEPOSIT: $0.00<br>FIRST PAYMENT: $99.00<br>LAST PAYMENT: $0.00<br>**Fee $:** $500.00<br>**Fee %:** 0 %<br>(% of Original Collateral Cost) |
| **Term:** 66<br>(Plus any Prefund or Per diem Period)<br>**Monthly Payment Schedule:** 1-6 @ $99.00, 7-66 @ $3,423.62 | | **Total Amount Due:** $599.00 |

**By signing below Debtor hereby irrevocably accepts the Collateral under this Agreement and irrevocably authorizes Creditor to pay the supplier on behalf of the Debtor. The person executing this Agreement is authorized to do so, making this Agreement the valid and binding act of the Debtor. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.**

**Debtor:** Middle Georgia Vascular Surgery Center L.L.C.

**By:** eSigned By: Allison Burkett Mar 07, 2023 11:09:53 AM PST

**Name and Title:** Allison Burkett Member

**Date:** 03/07/2023

**Creditor: Ameris Bank dba Balboa Capital**

**By:** eSigned By: Luljete Iljazi Mar 15, 2023 10:06:38 AM PDT

**Title: Vice President**

**Date:** 03/15/2023

Copy of Original

**GUARANTY:** You (jointly and severally if more than one) unconditionally guarantee to us and our assigns the payment and performance when due of all of the obligations of the Debtor under the Agreement and all related documents executed by the Debtor. You acknowledge that you have read and understood the Agreement and this Guaranty. You agree that you have an interest in the Debtor, economic or otherwise, and that we would not enter into this Agreement without this Guaranty. We may proceed against you before proceeding against the Debtor, the Collateral or enforce any other remedy. Notwithstanding any changes made to the Agreement in our dealings with Debtor, this Guaranty will remain in effect as changed even if you are not notified of the changes and will remain in effect even if the Agreements are no longer enforceable against the Debtor. You waive all notices to which you may have a right. You agree to pay us all our expenses in enforcing this Guaranty. You may not assign this Guaranty without our written consent. The governing law, jurisdiction and venue provisions of the Agreement shall apply to any action to enforce this Guaranty. You consent to our conducting a credit evaluation of you from all sources, periodically reporting and updating it and sharing the results with others. You agree that we may obtain any information from credit reporting agencies we deem necessary to enforce this Guaranty.

| Guarantor's Signature: | Name: | Date: |
|---|---|---|
| eSigned By: Allison Burkett Mar 07, 2023 11:09:53 AM PST | Allison Burkett | 03/07/2023 |
| **Guarantor's Signature:** | **Name:** | **Date:** |

**AUTHORIZATION FOR ACH PAYMENTS:** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in the Fees and Taxes section, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or the account from which the Debtor paid any deposit or fee in conjunction with the execution of this Agreement, or any account from which Debtor paid any obligation under this Agreement, or the account from which a cancelled or voided check provided by the Debtor can be drawn, for the payment of all amounts owed by Debtor from time to time under this Agreement. Debtor initiates each transaction and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in the Fees and Taxes section, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable. Any incorrect charge will be corrected upon notification to Creditor, by either a credit or debit to Debtor's account.

**Bank Name:** Truist **Bank City, State:** Warner Robins, GA

**ABA Routing No:** [redacted] **Account No.:** [redacted]6121

**Business Name on Account:** Middle Georgia Vascular Surgery Center

**Street Address on Account:** 1025 North Houston Road **City, State on Account:** Warner Robins, Ga.

**Authorized Signature:** eSigned By: Allison Burkett Mar 07, 2023 11:09:53 AM PST **Name and Title:** Allison Burkett Member


The original document is owned by Balboa Capital Corporation and this copy was created on Mar 15, 2023 10:06:52 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.


**TERMS OF EQUIPMENT FINANCING AGREEMENT ("Agreement")**

**Agreement. Ameris Bank dba** Balboa Capital, ("Creditor", "we", "us", or "our") agrees to lend to Debtor and you agree to borrow from us an amount for the financing of the Collateral.

**Commencement Date.** Upon verification of the delivery of the Collateral in a form acceptable to us ("Commencement Date"), you hereby authorize us to disburse the Collateral Cost as indicated on the supplier's invoice.

**Payments; Per Diem Expense Reimbursement.** Amounts received by us under this Agreement will be applied at our discretion to any amount outstanding. Debtor shall repay Creditor the above Monthly Payments in the number of monthly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .033333% of the Monthly Payment calculated from the number of days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.** All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments may be applied to the Obligations at Creditor's discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

**Grant of Security Interest.** You hereby grant to us a security interest in the Collateral and all proceeds to secure all of your obligations under this Agreement.

**Disclaimer of Warranties and Claims; No Agency.** We make no representation or warranty, express or implied, regarding any matter whatsoever including the merchantability or fitness for a particular purpose of the Collateral. This Agreement is irrevocable. ***Your obligation to pay all amounts payable hereunder is non-cancellable, absolute, and unconditional*** and will not be subject to any reduction, setoff, defense, counterclaim, deferment or recoupment for any reason, **even if the Collateral is damaged, destroyed or defective**. You acknowledge you selected the Collateral and the supplier and your supplier is not our agent nor are we their agent. You understand and agree that we are independent and separate from supplier. You acknowledge that no one, including the supplier, has been authorized to waive or change any term or condition of this Agreement. No representation by the supplier as to any matter shall bind us or affect your duty to pay all amounts and perform all obligations hereunder. You will use the Collateral for commercial purposes only, in compliance with the law and not for any personal, family or household use.

**Collateral.** You will not modify or change location of the Collateral without our proper written consent and allow us to inspect it upon our request. At your expense you will maintain the Collateral in good operation condition and repair. You will keep the Collateral free and clear from all liens and encumbrances. Titled Collateral will be titled and/or registered as we direct. You are responsible for any damage or destruction of the Collateral. You will at our election repair the Collateral at your expense or pay to us all amounts then due and owing plus the total of all unpaid Payments for the Term discounted at 3%. You will indemnify and hold us, our member, managers and employees harmless from and against any claims, costs, expenses, damages and liabilities, in any way relating to the Collateral.

Copy of Original

**Fees and Taxes.** You agree to pay when due and to hold us harmless from all taxes, interest and penalties relating to this Agreement and the Collateral ("Taxes") and reimburse us for those Taxes we pay on your behalf. If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction. You further agree to pay us a loan fee on or before the date the first payment is due and a termination fee. You also acknowledge that in addition to the other obligations due under this Agreement, we may assess and you may be required to pay additional taxes and/or fees, including an invoice fee. Such fees may not only cover our costs they may also include a profit. You will indemnify us against the loss of any tax benefits arising out of your acts or omissions.

**Insurance.** During the Term you will maintain insurance we specify on the Collateral. If you do not provide us satisfactory proof of insurance we may, but are not required, to buy such insurance for our benefit and add charges which any result in a higher premium you would pay if you obtained insurance, plus an interest charge. At our option, in lieu of obtaining or continuing insurance, we may require you to pay a monthly additional fee up to 2% of the cost of the Collateral. This fee is not calculated with reference to additional risk nor constitutes additional profit for us, but represents the basis on which we are willing to forbear from exercising remedies and continue this Agreement without the required insurance. You will receive no insurance coverage and will not be released from any obligation under this Agreement. We are not selling insurance. We will cease charging the additional fee or billing for insurance 30 days after you provide satisfactory proof of insurance.

**Initial:** Inits AB


The original document is owned by Balboa Capital Corporation and this copy was created on Mar 15, 2023 10:06:52 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.


**Default and Remedies.** If any one of the following occurs, you will be in default: (i) you fail to pay any amount under this Agreement when due; (ii) you cease doing business, admit your inability to pay your debts, or you file or have filed against you a petition under the Bankruptcy Code; (iii) you breach any other obligation contained in this Agreement; or (iv) any of the above events of default occur with respect to any Guarantor. Upon your default, we may do any or all of the following: (a) terminate this Agreement; (b) take possession of the Collateral; you irrevocably waive any security required of us in the event we take possession of the Collateral and require you to deliver it to us at your expense to a location designated by us; (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us; (d) sell, dispose of, hold, or lease the Collateral; (e) Creditor may sue for and recover from Debtor the sum of: (1) all unpaid Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (f) exercise any other right or remedy which may be available to us under applicable law. You shall reimburse us for all costs we incur in enforcing our rights including our attorney's fees and costs of repossession, repair, storage and remarketing of the Collateral. A waiver of default will not be a waiver of any other subsequent default.

**General.** This Agreement **will be governed and construed under the laws of the State of California** without reference to its principle of conflicts of laws and is deemed to have been made and performed in Orange County, CA. **You submit to the exclusive and mandatory jurisdiction of CA** and agree that the CA state courts and/or the United States District Court for the Central District of California, Santa Ana Division, will have exclusive and mandatory jurisdiction over any action or proceeding to enforce this Agreement or any action or proceeding arising out of this Agreement. **We may at our sole discretion commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.** You waive any objection based on improper venue and/or forum non-conveniens. You irrevocably grant us the right to make such filings under the Uniform Commercial Code as we deem necessary. You agree to pay us interest on all past due amounts at the lower of 1.5% per month or the highest rate allowed by law. You will not assign your rights under this Agreement, or permit the Collateral to be used by anyone other than you. We may assign this Agreement, in whole or in part, without notice to you or without your consent. You agree that our assignee will have the same rights and benefits that we have now, but will not be subject to any claims, defenses or set offs that you may have against us. **This Agreement constitutes the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing. This Agreement cannot be modified except in writing signed by the party against whom enforcement is sought. Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** You represent and warrant to us that all information conveyed to us in connection with this Agreement and all related documents whether by you, a guarantor, a supplier or any other person, is true, accurate, complete and not misleading. This Agreement may be executed in separate counterparts which together shall be the same instrument. You agree this Agreement may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. All fees may not only cover our costs but may include a profit. You may not repay this Agreement without our prior written consent. If Debtor constitutes more than one person, the liability of each shall be joint and several. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. Any notice given hereunder shall be in writing and deemed given two business days after being deposited with the US Postal Service, first class postage prepaid, and addressed to the Debtor at its address set for above or to Creditor at 575 Anton Blvd., 12th Floor, Costa Mesa, CA 92626, or such other address given to the sender by written notice.

**Initial:** Inits AB

Copy of Original


The original document is owned by Balboa Capital Corporation and this copy was created on Mar 15, 2023 10:06:52 AM.

cartessa™

Exhibit A1

# INVOICE

#SO-014312
2/28/2023

Cartessa Aesthetics, LLC 175 Broadhollow Rd Suite 185 Melville NY 11747 United States

**Bill To**

Middle Georgia Vascular Surgery Center L.L.C.
1025 N Houston Road
Warner Robins GA 31093
United States

**Ship To**

Middle Georgia Vascular Surgery Center L.L.C.
1025 N Houston Road
Warner Robins GA 31093
United States

**Total: $149,693.00**

| Payment Method | PO # | Shipping Method | Ship Date |
|---|---|---|---|
| | | UPS® Ground | 2/28/2023 |

| Quantity | Item | Rate | Amount |
|---|---|---|---|
| 1 | **Motus AZ+** | $139,900.00 | $139,900.00 |
| 1 | **Manufacturer Warranty - Motus AZ+ (1 Yr)** | $0.00 | $0.00 |
| 1 | **Installation** | $0.00 | $0.00 |
| 1 | **Training - Inservice** | $0.00 | $0.00 |
| 1 | **Sub-Z**<br>Sub-Z | $0.00 | $0.00 |
| 1 | **Manufacturer Warranty - Sub-Z (2 Yr)** | $0.00 | $0.00 |
| 1 | **Flir TG267 Thermal Camera Flir TG267 Thermal Camera**<br>Flir TG267 Thermal Camera | $0.00 | $0.00 |

| | |
|---|---|
| **Subtotal** | $139,900.00 |
| **Tax Total (%)** | $9,793.00 |
| **Shipping Cost** | $0.00 |
| **Total** | $149,693.00 |
| **Deposited Amount** | $0.00 |
| **Remaining Amount** | $149,693.00 |

**TAX ID: [redacted]5943**

**Wire/ACH Payment Information:**
**Bank of America**
**250 Main St.**
**Huntington, NY 11743**
**United States of America**

**Account: [redacted]2648**
**ABA Routing (for ACH): [redacted]**
**Routing for Wires: [redacted]9593**



[redacted]

# Exhibit “2”

# iLien Cover Page

Date Printed: 03/07/2023

Debtor:

Middle Georgia Vascular Surgery Center L.L.C.
1025 N Houston Rd
Warner Robins, GA 31093

Equip / Lease #: 445706-000

Reference #: 523847

REF3:

REF4:

Ref5:

Ref6:

Ref7:

Law Firm Bill Code:

iLien File #: 86450258

Order Confirmation #: 91731887

UserID: 318824

UserName: LULJETE ILJAZI

Number of Collateral Pages Attached: 0

Transaction Type: Original

Jurisdiction: GA, Barrow

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

91731887

GAGA

File with: Barrow, GA

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME<br>Middle Georgia Vascular Surgery Center L.L.C. | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS<br>1025 N Houston Rd | CITY<br>Warner Robins | STATE<br>GA | POSTAL CODE<br>31093 | COUNTRY<br>USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>C T Corporation System, As Representative | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>330 N Brand Blvd, Suite 700, Attn: SPRS | CITY<br>Glendale | STATE<br>CA | POSTAL CODE<br>91203 | COUNTRY<br>USA |

4. COLLATERAL: This financing statement covers the following collateral:
All equipment subject to that certain Agreement Number LA# 445706-000 dated 3/7/2023, between Secured Party as Lessor/Creditor and Debtor as Lessee/Debtor, and subject to any and all existing and future schedules entered into pursuant to and incorporating said Agreement, together with all accessories, parts, attachments and appurtenances appertaining or attached to any of the Equipment, and all substitutions, trade-ins, proceeds, renewals and replacements of, and improvements and accessions to the Equipment. LA# 445706-000

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
91731887



Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# Exhibit “3”

MMP CAPITAL

EQUIPMENT FINANCE AGREEMENT

EFA No.: 202406_87954 Date: 6/12/2024

| | |
|---|---|
| **Creditor ("we," "us" and" "our"):** MMP CAPITAL, LLC<br>19 Engineers Lane, Farmingdale, NY 11735 | **Debtor ("you" or "your"):** Middle Georgia Vascular Surgery Center L.L.C.<br>1025 N HOUSTON RD, WARNER ROBINS, GA 31093 |
| **Equipment Supplier ("Supplier"):** BTL Industries<br>362 ELM ST, MARLBOROUGH, MA 01752 | **Equipment Location:**<br>1025 N HOUSTON RD, WARNER ROBINS, GA 31093 |

**Financed Equipment Description ("Collateral"):** Emsella Workstation
The Collateral as generally described above and herein which Creditor and Debtor agree that a more detailed description of said Collateral being financed shall be maintained by us among our books and records in whatever more detailed description of the Collateral being financed is received from the supplier of such Collateral and, absent manifest error, such detailed description shall be considered incorporated into this Equipment Finance Agreement ("EFA") and shall be provided to Debtor within a reasonable time upon request.

| | | |
|---|---|---|
| **Security Deposit (if any):** $3,529.76<br>**Documentation Fee (if any):** $1,150.00 | **Monthly Installment Payment ("Payments"):** 60 @ $3,529.76 | **Term:** 60 **(Mos.)** |

**Agreement.** Creditor agrees to lend to Debtor and you agree to borrow from us an amount for the financing of the Collateral. You authorize us to pay the Supplier for the Collateral. You agree this EFA shall commence on the earliest date Creditor pays the Supplier (the "Commencement Date"). You authorize us to insert or correct information in this EFA, including your proper legal name, address, serial numbers and any other information describing the Collateral. You acknowledge that the payment obligations hereunder begin on the Commencement Date, notwithstanding that the Collateral may not have been delivered, installed or accepted by you. Amounts received by us under this EFA shall be applied as we determine. Debtor promises to pay Creditor the Payments set forth above. You shall pay all amounts due hereunder via ACH unless otherwise agreed in writing by us. Upon execution of this EFA, you will deliver to us the Advance Payment as set forth above, which you agree is non-refundable. To the extent permitted by law, we may charge you a fee not to exceed $9,950, plus any applicable sales/use tax, to cover documentation and credit investigation costs. Payments may be adjusted upward or downward no more than fifteen percent (15%) to reflect actual cost. The first Payment is due at the start of Creditor's applicable billing cycle as specified by the Creditor; each subsequent Payment is due on the same date of each preceding month until all Payments have been received by Creditor. Each date a Payment is due is a "Due Date" and along with the Payment due on the first Due Date, Debtor agrees to pay us a prorated payment for an amount equal to 1/30th of the Payment amount for each day calculated from the Commencement Date until the first Due Date (the "Prorated Payment"). The Prorated Payment shall be due upon execution of this EFA. Any amount not paid when due is subject to a late charge of the greater of fifty dollars ($50.00) or ten percent (10%) of such delinquent amount, but not more than the highest rate allowed by law. You acknowledge and agree that you shall bear sole responsibility for and shall have no claim against and Lender shall have no liability in the event the Collateral is: (a) not delivered; (b) damaged during transit (c) not properly installed or functioning upon installation; (d) defective or otherwise fails to perform in accordance with Supplier's specifications; or (e) otherwise unacceptable to you for any other reason.

**Information; Credit Reports.** YOU AUTHORIZE US AND OUR ASSIGNEES TO OBTAIN CREDIT REPORTS AND MAKE CREDIT INQUIRIES AS WE DEEM NECESSARY. We will inform you upon request if we have sought a consumer credit report and the name and address of any credit reporting agency that provided a report. You agree that we may request and use additional credit reports to update our information without further notice to you as long as you have obligations under this Agreement. Upon our request, you agree to provide us with business and personal tax returns, banking, and financial statements setting forth your financial condition and operations. You warrant that all information you have and will deliver to us, including the information in this EFA, is true, accurate and correct and you acknowledge that we are relying on such information to enter into this EFA.

**Grant of Security Interest.** You hereby grant us a perfected, first priority security interest in the Collateral, all accession and additions thereto, replacements or substitutions thereof, and all proceeds to secure all of your obligations under this EFA.

**Disclaimer of Warranties and Claims.** We make no representation or warranty to any matter whatsoever including the merchantability or fitness for particular purpose of the Collateral. This EFA is irrevocable. **Your obligation to pay all amounts hereunder is non-cancellable, absolute, and unconditional and will not be subject to any reduction, setoff, defense, counterclaim, deferment or recoupment for any reason, even if the Collateral is damaged, destroyed or defective. YOU ACKNOWLEDGE YOU SELECTED THE COLLATERAL AND THE SUPPLIER AND YOUR SUPPLIER IS NOT OUR AGENT, NOR ARE WE THEIR AGENT. YOU ACKNOWLEDGE THAT NO ONE, INCLUDING THE SUPPLIER, HAS BEEN AUTHORIZED TO WAIVE OR CHANGE ANY TERM OR CONDITION OF THIS EFA. NO REPRESENTATION BY THE SUPPLIER AS TO ANY MATTER SHALL BIND US OR AFFECT YOUR DUTY TO PAY ALL AMOUNTS AND PERFORM ALL OBLIGATIONS HEREUNDER.** You will use the collateral for commercial purposes only, in compliance with the law and not for any personal, family or household use.

**Collateral.** You will not modify or change the location of the Collateral without our prior consent and allow us to inspect it upon our request. At your expense, you will maintain the Collateral in good operating condition and repair. You will keep the Collateral free and clear of all liens and encumbrances, shall remain personal property and will not become fixtures. Titled Collateral will be titled and/or registered as we direct. You are responsible for any damage or destruction to the Collateral. You will at our election repair the Collateral at your expense or pay to us all amounts then due and owing plus the total of all unpaid Payments for the Term, discounted at the lower of 3% or the then current discount rate of the Federal Reserve Bank of New York as calculated by us.

**Fees and Taxes.** You agree to pay when due and to hold us harmless from all taxes, interest and penalties relating to this EFA and the Collateral ("Taxes") and reimburse us for those Taxes we pay on your behalf. If we pay any of the above for you, you agree to reimburse us and pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code (UCC) or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction. You also acknowledge that in addition to the other obligations due under this EFA, we may assess, and you may be required to pay additional taxes and/or fees including an invoice fee. Such fees may not only cover our costs, they may also include a profit.

**Insurance.** You agree to obtain and maintain at your expense property insurance for the full replacement value of the Equipment, protecting the Equipment against Loss, and liability insurance, in an amount acceptable to us, but in no event less than $1,000,000 covering any injury, death or third-party property damage arising out of or relating to use of the Equipment. If the Equipment must be titled under title registration laws ("Mobile") then you shall obtain and maintain all risk physical damage insurance. All insurance policies must provide that no cancellation shall be effective without thirty (30) days' prior written notice to us. At our request, you agree to name any party who may have a security interest in the Equipment as Lender's Loss Payee. You agree to provide proof of insurance to us. You hereby grant us a limited power of attorney allowing us to make a claim for, receive payment on, and endorse or execute for our benefit any instrument representing proceeds from any policy issued on the Equipment. IF YOU FAIL TO PROVIDE PROOF OF INSURANCE ACCEPTABLE TO US WITHIN 10 DAYS OF THE COMMENCEMENT DATE, WE HAVE THE RIGHT BUT NOT THE OBLIGATION TO SECURE INSURANCE IN SUCH FORM AND AMOUNT AS WE DEEM NECESSARY AND YOU AGREE THAT IN ADDITION TO INSURANCE PREMIUMS WE MAY CHARGE YOU INTEREST AT 2% PER MONTH AND/OR AN ADMINISTRATIVE FEE WHICH MAY RESULT IN A PROFIT TO US. YOU UNDERSTAND THAT IF WE PROCURE INSURANCE YOU MAY PAY MORE THAN IF YOU HAD PROCURED INSURANCE AND THE INSURANCE MAY NOT NAME YOU AS AN INSURED AND MAY NOT FULLY PROTECT YOU IN THE EVENT OF A LOSS. YOU AGREE THAT DISPUTES REGARDING INSURANCE OR FEES CHARGED FOR PROCURING INSURANCE WILL BE DETERMINED BY ARBITRATION CONDUCTED IN NASSAU COUNTY, NEW YORK UNDER THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION.

**Debtor Indemnification.** You hereby agree to defend, indemnify and hold us and our agents, successors, assignees and employees harmless from any and all liability, damage, penalty, claims, actions, expenses, disbursements or loss, including attorneys' fees and court costs, arising out of or relating to this EFA, liabilities you have assumed hereunder, and the purchase, sale, financing, ownership, selection, installation, design, licensing, possession, operation, control, use, maintenance, servicing, repair, storage, shipment, transportation or delivery of the Collateral. The indemnities contained herein and all of our rights and remedies in this agreement shall survive the expiration or other termination of this EFA.

**Default and Remedies.** If any one of the following occurs, you will be in default: (i) you fail to pay any amount under this EFA when due; (ii) you cease doing business, admit your inability to pay your debts, or you file or have filed against you a petition under the Bankruptcy Code; (iii) you breach any other obligation contained in this EFA or under any other agreement with us; (iv) a writ or order of attachment or execution or other legal process is levied on or charged against the Collateral which is not released or satisfied within 10 days; (v) you change your state of organization without 30 days prior notice to us; or (vi) any of the above events of default occur with respect to any guarantor. Upon your default, we may do any of the following: (a) terminate this EFA; (b) foreclose on our security interest and require you to immediately turn over the Collateral to us at your sole expense, or we may peaceably repossess the same without liability for trespass, and upon receipt of the Collateral, sell the Collateral at terms we determine at one or more private sales, and apply the net proceeds (after deducting any related expenses) to your payment obligations, and you will remain liable for any deficiency with any excess being retained by us; (c) declare all sums due and to become due hereunder immediately due and payable, all future Payments discounted at the lower of three percent (3%) or the then-current discount rate of the Federal Reserve Bank of New York as calculated by us; (d) sell, dispose of, hold, or lease the Collateral; (e) exercise any other right or remedy which may be available to us under applicable law. You shall reimburse us for all costs we incur in enforcing our rights (including our attorneys' fees) and costs of repossession, repair, storage and remarketing of the Collateral. A waiver of default will not be a waiver of any other subsequent default.

**General.** This EFA shall be governed and construed under the laws of the State of New York (NY), without reference to its principle of conflicts of laws and is deemed to have been performed in Nassau County, NY. You submit to the jurisdiction of NY and agree that the state and federal courts sitting in Nassau County, New York, shall have the exclusive jurisdiction over any action or proceeding to enforce this EFA or any action or proceeding arising under this EFA. You acknowledge the jurisdiction may change at the sole discretion of MMP CAPITAL, LLC's successors and/or assigns. You waive any objection based upon improper venue and/or forum non-conveniens. You irrevocably grant us the right to make such filings under the UCC as we deem necessary. In addition to any late charges described herein, you agree to pay us interest on all past due amounts at the lower of 1.5% per month or the highest rate allowed by law. You will not assign your rights under this EFA, or permit the Collateral to be used by anyone but you. We may assign this EFA, in whole or in part, without notice to you or your consent. You agree that our assignee will have the same rights and benefits that we have now but none of our obligations, and you will not assert any claims, defenses or set offs against our assignee that you may have against us or any supplier. This EFA sets forth the entire understanding of the parties with respect to its subject matter and may only be amended in writing signed by both parties, except as otherwise stated in the section above titled "Agreement." You represent and warrant to us that (i) this EFA constitutes a legal, valid, and binding obligation, enforceable against you in accordance with its terms; (ii) you have the ability to perform all of your obligations under this EFA; and (iii) all information conveyed to us in connection with this EFA and all related documents whether by you, a guarantor, a Supplier or any other person, is true, accurate, complete and not misleading. This EFA may be executed in separate counterparts, which together shall be the same instrument. You agree this EFA may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. All fees may not only cover our costs but may include a profit. As long as you are not in default under this EFA, you may repay this EFA by paying an amount equal to the sum of any and all remaining Payments and any and all other fees currently due and payable. If Debtor constitutes more than one person, the liability of each shall be joint and several. A copy of this EFA (whether delivered by facsimile, in portable document format (PDF) or otherwise) shall be deemed an original for all purposes. Any notice given hereunder shall be in writing and deemed given two business days after being deposited with the US Postal Service, first class postage prepaid, and addressed to the Debtor or Creditor (as the case may be) at its address set for above, or such other address given to the sender by written notice. MMP CAPITAL, LLC is a registered Delaware Limited Liability Company. Each party waives any right to a jury trial. USA Patriot Act requires us to obtain, verify, and record information that identifies you thus we ask for your name, address and other information or documents that substantiate your identity. USA Patriot Act requires us to obtain, verify, and record information that identifies you thus we ask for your name, address and other information or documents that substantiate your identity.

**By signing below, Debtor hereby irrevocably accepts the Collateral under the EFA and irrevocably authorizes Creditor to pay the Supplier on behalf of the Debtor. The person executing this EFA is authorized to do so, making this EFA the valid binding act of the Debtor.**

| | | |
|---|---|---|
| **Debtor:** Middle Georgia Vascular Surgery Center L.L.C. | | **Accepted by MMP CAPITAL, LLC** |
| **By:** [signature] | | **By:** [signature] |
| **Print Name:** Allison Burkett | | **Print Name:** John-Paul M. Smolenski, Sr. |
| **Title:** Member | **Date:** 6/13/24 | **Title:** Managing Member |
| **Debtor Tax ID:** [redacted]5917 | | **Date:** 6/21/2024 |

**GUARANTY:** In consideration of Creditor entering into the EFA, the undersigned, together and separately, unconditionally, personally and irrevocably guarantee to Creditor the prompt payment and performance of all Debtor's obligations now and/or hereafter owes to Creditor. You agree that this is a guaranty of payment, not collection, and that Creditor can proceed directly against you without first proceeding against Debtor or the Collateral. You waive notice of acceptance, acceleration and default and all defenses, including protest, presentment and demand. Creditor may renew, extend or otherwise change the terms of the EFA without notice to you and you will be bound by such changes, and you will pay all of Creditor's costs of enforcement and collection, including reasonable attorneys' fees. This Guaranty is binding on your heirs, administrators, representatives, successors and assigns and survives the insolvency, bankruptcy or discharge from bankruptcy of Debtor. THIS GUARANTY WILL BE GOVERNED BY NEW YORK LAW. YOU AGREE TO JURISDICTION AND VENUE IN THE STATE AND FEDERAL COURTS AS SET FORTH IN THE EFA.

| | | |
|---|---|---|
| **Guarantor's Signature:** [signature] | **Print Name:** Allison Burkett | **Date:** 6/13/24 |

**AUTHORIZATION FOR ACH PAYMENTS:** Debtor hereby authorizes and requests MMP CAPITAL, LLC ("Creditor"), and/or its successors or assigns, to initiate electronic debit entries or effect a change by any other commercially accepted practice, to the account indicated below or in the attached ACH Authorization, and hereby authorize the financial institution ("Bank") named below or in the attached ACH Authorization to honor the debit entries initiated by Creditor or its assignee and debit the same to such account. This authorization is to remain in full force and effect until such time that Creditor has received written notification from Debtor of its termination in such time and in such manner as to afford Creditor and the Bank a reasonable opportunity to act on same. Debtor understands that the withdrawal of this authorization without the written consent of Creditor shall constitute default of the Equipment Finance Agreement for which this payment is being made. If an electronic debit entry is returned unpaid, Debtor authorizes the entry to be re-debited in addition to a processing fee of $20.00.

| | | | |
|---|---|---|---|
| **Debtor Bank Name:** Truist | **Bank Phone #:** | | |
| **Address:** | **City:** | **State:** | **Zip:** |
| **Name on Account:** Middle Georgia Vascular Surgery Center | **ABA #:** [redacted] | **Bank Account #:** [redacted]1121 | |
| **By:** [signature] | **Print Name:** Allison Burkett | **Title:** Member | **Date:** 6/13/2024 |

**PLEASE COMPLETE THE BELOW STATEMENT OF AUTHORITY IF APPLICABLE.**

**CORPORATE OR LIMITED LIABILITY COMPANY STATEMENT OF AUTHORITY**

This Statement of Authority is executed pursuant to the Business Corporations Act or Limited Liability Company Act (as the case may be) of the state GA regarding Middle Georgia Vascular Surgery Center L.L.C. (the "Company").

The following persons are the Directors or Officers of the Company or Members, Managers or Officers of the Company (as the case may be) and have full power and authority to act on behalf of the Company and execute all instruments on behalf of the Company and to any contract, including, but not limited to, this Equipment Finance Agreement.

| Print Name | Title | Signature |
|---|---|---|
| Allison Burkett | Member | [signature] |

The authority of the foregoing persons to bind the Company is not limited.

Executed 6/13/24

| | | |
|---|---|---|
| **By:** [signature] | **Print Name:** Allison Burkett | **Title:** Member |

# Exhibit "4"

MMP CAPITAL

**NOTICE OF ASSIGNMENT**
**EFA No: 445706-001**

2024-06-21

Middle Georgia Vascular Surgery Center L.L.C.
1025 N HOUSTON RD
WARNER ROBINS, Georgia, 31093

**Re: Notice of Assignment (this "Notice") of Equipment Finance Agreement No. 445706-001 (the "Finance Agreement") between MMP CAPITAL LLC ("Creditor") and Middle Georgia Vascular Surgery Center L.L.C. ("Debtor")**

We are writing to let you know that we have recently assigned to Ameris Bank dba BALBOA CAPITAL ("Purchaser"), whose offices are at 575 ANTON BLVD FL 12, COSTA MESA, CA 92626, all right, title, interest and obligations of Creditor in and to the Finance Agreement and the equipment described in the Finance Agreement (the "Equipment). No settlement of amounts due under the Finance Agreement or future modification, termination, amendment or supplement to the Finance Agreement shall be effective without Purchaser's prior written consent, Subject to Purchaser's exclusive right to direct Debtor otherwise, from and after the date of this Notice, all sums now or hereafter becoming due pursuant to the Finance Agreement will now be invoiced by Purchaser and be paid to Purchaser at the following address:

575 ANTON BLVD FL 12
COSTA MESA, CA 92626

Should you have any questions, please feel free to contact us. Thank you for your business.

Kind regards,

MMP CAPITAL LLC

19 Engineers Ln
Farmingdale, NY 11735

(516) 454-4570
Fax (516) 706-2005

info@mmpcapital.com
www.mmpcapital.com

# Exhibit “5”

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
CSC 1-800-858-5294

B. E-MAIL CONTACT AT SUBMITTER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

2858 11280
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Georgia
(Central Index - Coweta County)

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: Middle Georgia Vascular Surgery Center L.L.C.

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1025 N HOUSTON RD | WARNER ROBINS | GA | 31093 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: Ameris Bank

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 575 ANTON BLVD FL 12 | COSTA MESA | CA | 92626 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

One (1) Emsella Workstation, S/N: 09900B008754 / 29930B005057; Together with all present and future attachments, accessories, additions, accessions, parts and supplies, and any replacements thereof, installed in, affixed to, or used in connection with said property and all proceeds of said property.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: Middle Georgia Vascular Surgery Center L.L.C.

2858 11280

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **In Re:** | : | |
| | : | **CHAPTER 11 BANKRUPTCY** |
| **MIDDLE GEORGIA VASCULAR SURGERY L.L.C.,** | : | **CASE NO.: 26-51113-RMM** |
| **Debtor.** | : | |
| **AMERIS BANK, THROUGH ITS DIVISION BALBOA CAPITAL CORPORATION,** | : | **CONTESTED MATTER** |
| **Movant,** | : | |
| **v.** | : | |
| **MIDDLE GEORGIA VASCULAR SURGERY L.L.C.,** | : | |
| **Respondent.** | : | |

## CERTIFICATE OF SERVICE

THIS WILL CERTIFY that the following parties have been served with the foregoing *Notice of Hearing* and *Ameris Bank, through its division Balboa Capital Corporation's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(e) Rights and Waiver of 11 U.S.C. § 362(e) Rights* by electronic service through CM/ECF, via hand-delivery within our firm, and/or by depositing a copy in the United States Mail with sufficient postage affixed thereon to assure delivery to the individuals and/or entities on the attached Exhibit "A":

This the 28th day of August, 2026.

**MOORE, CLARKE, DuVALL & RODGERS, P.C.**

/s/ *David A. Garland*
**DAVID A. GARLAND**
Georgia State Bar No.: 005680
*Attorneys for Ameris Bank, through its division Balboa Capital Corporation*

**EXHIBIT "A"**

**26-51113-RMM Notice will be electronically mailed to:**

Clinton R. Mikel on behalf of Creditor Advanced Wound Care LLC
emikel@thehlp.com

David A. Garland on behalf of Creditor Balboa Capital Corporation, a division of Ameris Bank
dgarland@mcdr-law.com; tlansman@mcdr-law.com

Stephan A. Ray on behalf of Creditor Balboa Capital Corporation, a division of Ameris Bank
sray@mcdr-law.com; tlansman@mcdr-law.com

David L. Bury, Jr. on behalf of Debtor Middle Georgia Vascular Surgery Center L.L.C.
dbury@stoneandbaxter.com; lchapman@stoneandbaxter.com; wporter@stoneandbaxter.com; tnorton@stoneandbaxter.com

David L. Bury, Jr. on behalf of Debtor Middle Georgia Vascular Surgery Center L.L.C.
terymes@stoneandbaxter.com; lchapman@stoneandbaxter.com

Robert G. Fenimore on behalf of U.S. Trustee – MAC
robert.g.fenimore@usdoj.gov; Ustp.region21.mc.ecf@usdoj.gov

U.S. Trustee – MAC
Ustp.region21.mc.ecf@usdoj.gov

Jason Wyman on behalf of Creditor Truist Bank
Jason.Wyman@wbd-us.com

**26-51113-RMM Notice will not be electronically mailed to:**

Middle Georgia Vascular Surgery Center L.L.C.
804 Beavers Road
Canton, Georgia 30115
*Debtor*

American Vascular Associates
3001 Palm Harbor Blvd - Ste. A
Palm Harbor, FL 34683

Boston Scientific Corporation
P.O. Box 786205
Philadelphia, PA 19178-6205

Flamingo Medical Services, LLC
1025 N. Houston Rd.
Warner Robins, GA 31093

Integris Assurance Company
P.O. Box 875
Brattleboro, VT 05302-0875

Martin Snow, LLP
4025 Vineville Ave.
Macon, GA 31210

Medline Industries, LP
Dept Ch 14400
Palatine, IL 60055-4400

Medtronic USA Inc
P.O. Box 409201
Atlanta, GA 30384-9201

MMP Capital LLC
4025 Vineville Ave.
Macon, GA 31210

New Lane Finance
123 S Broad St., 17th Floor
Philadelphia, PA 19109

North Mill Equipment Finance LLC
601 Merrit 7 – Ste. 5
Norwalk, CT 06851

Organogenesis Inc
150 Dan Rd.
Canton, MA 02021

Philips Healthcare
P.O. Box 100355
Atlanta, GA 30384-0355

Stearns Bank Equipment Finance
P.O. Box 327
Albany, MN 56307-0327

Truist Financial Corporation
P.O. Box 791622
Baltimore, MD 21279-1622

Truist Financial Corporation
P.O. Box 580050
Charlotte, NC 28258-0050