**SO ORDERED.**

**SIGNED this 27 day of August, 2026.**

**Robert M. Matson**
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| **MIDDLE GEORGIA VASCULAR SURGERY CENTER L.L.C.,** | : | Chapter 11 |
| | : | |
| | : | Case No. 26-51113-RMM |
| Debtor. | : | |
| | : | Contested Matter |
| **MIDDLE GEORGIA VASCULAR SURGERY CENTER L.L.C.,** | : | |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | |
| | : | |
| **TRUIST BANK,** | : | |
| | : | |
| Respondent. | : | |

**FINAL ORDER (A) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND (B) GRANTING ADEQUATE PROTECTION TO TRUIST BANK**

This matter came before the Court on August 26, 2026 (the “Final Hearing”), on the *Motion for Interim and Final Orders (A) Authorizing the Use of Cash Collateral Pursuant to Section*

*363(c) of the Bankruptcy Code; (B) Requesting an Expedited Interim Hearing Thereon; and (C) Scheduling a Final Hearing on the Valuation and Use of Cash Collateral* (the "**Motion**") [Doc. No. 3] filed by Middle Georgia Vascular Surgery Center L.L.C., debtor and debtor-in-possession (the "**Debtor**"). The Court entered its *Interim Order (A) Authorizing the Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and (B) Scheduling a Final Hearing on Valuation and Use of Cash Collateral* on July 9, 2026 [Doc. No. 22] (the "**Interim Order**"). Upon consideration of the Motion, the objection of Truist Bank ("**Truist**"), if any, the representations and evidence presented at the Final Hearing, the agreement of the Debtor and Truist as reflected herein, and the entire record in this case, and it appearing that adequate notice of the Motion and the Final Hearing has been given under the circumstances, the Court **FINDS AND CONCLUDES** as follows:

1. **Jurisdiction and Venue.** This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief granted herein are 11 U.S.C. §§ 105, 361, 362, 363, 506, 507, and 552 and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2. **Petition Date; Debtor-in-Possession**. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 1, 2026 (the "**Petition Date**"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. **Notice**. Notice of the Motion, the relief requested therein, and the Final Hearing was given to the Debtor's twenty largest unsecured creditors, all known parties asserting an interest in the Cash Collateral (as defined below), the United States Trustee, and all parties requesting

notice in this case. Under the circumstances, such notice constitutes due, proper, and sufficient notice under 11 U.S.C. § 363 and Bankruptcy Rules 2002, 4001(b), and 9014, and no other or further notice is necessary.

4. **Prepetition Loan Documents.** Prior to the Petition Date, Truist extended credit to the Debtor evidenced by, among other documents, the following (collectively, together with all other documents executed in connection therewith, the "**Loan Documents**"):

(i) that certain Promissory Note dated September 8, 2021, in the original principal amount of $384,000.00, bearing interest at 3.780% per annum, with a final maturity date of September 20, 2031 (the "**Term Note**"); and

(ii) that certain Promissory Note dated August 30, 2023, in the maximum principal amount of $150,000.00, evidencing a discretionary line of credit payable on demand (the "**Line of Credit Note**," and together with the Term Note, the "**Notes**").

5. **Prepetition Liens**. The obligations evidenced by the Notes are secured by, among other things: (i) that certain Security Deed dated September 8, 2021, granted by the Debtor to Truist encumbering the real property commonly known as 1025 N. Houston Road, Warner Robins, Houston County, Georgia, together with rents, accounts, and contract rights arising therefrom, recorded in Deed Book 9340, Page 111, Houston County, Georgia records (the "Security Deed"); and (ii) that certain Commercial Security Agreement dated August 30, 2023, pursuant to which the Debtor granted Truist a security interest in substantially all of the Debtor's personal property, including all inventory, equipment, accounts (including all health-care-insurance receivables), chattel paper, instruments, letter-of-credit rights, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including all

payment intangibles), together with all records, supporting obligations, accessions, additions, substitutions, replacements, products, and proceeds thereof, whether then owned or thereafter acquired (the "**Security Agreement**"). Truist perfected its security interest in the foregoing personal property by the filing of a UCC-1 Financing Statement on September 1, 2023, File No. 007-2023-044990, with the Clerk of Superior Court of Barrow County, Georgia, indexed in the Georgia Statewide UCC Filing Index. The Security Deed and the Security Agreement each contain cross-collateralization provisions securing all obligations of the Debtor to Truist.

6. **Loan Obligations.** As of July 1, 2026, the Debtor was indebted to Truist under the Term Note in the approximate amounts of $106,621.55 and $234,940.52 under the Line of Credit, together with additional interest, fees, costs, expenses (including attorneys' fees), and other charges accruing or chargeable thereafter under and in accordance with the Prepetition Loan Documents and applicable law (collectively, the "**Loan Obligations**").

7. **Prepetition Collateral and Cash Collateral.** All property of the Debtor securing the Loan Obligations is referred to herein as the "**Prepetition Collateral**." The Debtor's cash on hand, funds on deposit (including funds on deposit in the Debtor's accounts ending in 6121 and 2812), accounts, health-care-insurance receivables, government and third-party payor reimbursement rights, and all proceeds, products, offspring, rents, and profits of the Prepetition Collateral constitute the "**Cash Collateral**" of Truist within the meaning of 11 U.S.C. § 363(a). The Debtor requires the use of Cash Collateral to fund its ongoing operations.

8. **Debtor's Stipulations.** Subject to Paragraph I below, the Debtor admits, stipulates, acknowledges, and agrees that: (i) the Prepetition Loan Documents are valid, binding, and enforceable obligations of the Debtor; (ii) the Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor, and are not subject to any offset, defense,

counterclaim, recharacterization, subordination, or avoidance; (iii) Truist holds valid, binding, enforceable, properly perfected, and non-avoidable first-priority liens on and security interests in the Prepetition Collateral, including the Cash Collateral; and (iv) as of the Petition Date, the Debtor held no claims, causes of action, or defenses against Truist, and any such claims, causes of action, and defenses are hereby released and waived by the Debtor.

9. **Reservation of Challenge Rights.** The stipulations in Paragraph 8 are binding on the Debtor and its estate in all circumstances. Such stipulations shall be binding on all other parties in interest unless a party in interest with requisite standing commences an adversary proceeding or contested matter challenging the validity, enforceability, priority, extent, perfection, or amount of the Loan Obligations or Truist's liens on the Prepetition Collateral, or asserting any claim or cause of action against Truist, on or before the date that is **sixty (60)** days after entry of this Order (or, in the case of an official committee of unsecured creditors, if one is appointed, sixty (60) days after the date of its appointment) (the "**Challenge Deadline**"). If no such challenge is timely commenced, the stipulations in Paragraph H shall be binding on all parties in interest and the estate for all purposes, and any such claims shall be deemed forever waived, released, and barred.

10. **Need for Cash Collateral; Good Cause.** The Debtor has represented that, absent the use of Cash Collateral, it will be unable to fund payroll, insurance, supplies, and other ordinary and necessary operating expenses, and that the value of the Prepetition Collateral would be materially diminished. The Debtor's use of Cash Collateral in accordance with the Budget (as defined below) and the terms of this Order is necessary to avoid immediate and irreparable harm to the estate and to preserve the going-concern value of the Debtor's business for the benefit of Truist and other creditors. Good cause has been shown for entry of this Order, and the relief granted herein is in the best interests of the Debtor, its estate, and its creditors.

11. **Adequate Protection.** The adequate protection provided to Truist under this Order—consisting of the Adequate Protection Payments, the Replacement Liens, the Section 507(b) Claim, the Budget limitations, the reporting obligations, and the other covenants and protections set forth herein—is fair and reasonable and is sufficient to protect Truist against the diminution in value of its interest in the Prepetition Collateral, including the Cash Collateral, resulting from the Debtor's use, sale, or lease thereof, the imposition of the automatic stay, and the Debtor's use of Cash Collateral. Nothing herein shall constitute a finding that such adequate protection will remain sufficient, and Truist's right to seek additional or different adequate protection is expressly preserved.

12. **Good Faith; Arm's-Length Negotiation.** The terms of this Order were negotiated in good faith and at arm's length between the Debtor and Truist, and Truist's consent to the Debtor's use of Cash Collateral on the terms set forth herein is given in good faith within the meaning of 11 U.S.C. § 363(m).

13. Based upon the foregoing findings of fact and conclusions of law, and for good cause shown, it is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1. **Motion Granted.** The Motion is GRANTED on a final basis on the terms and conditions set forth in this Order. All objections to the Motion not otherwise withdrawn, resolved, or consented to are overruled. To the extent of any inconsistency between this Order and the Interim Order, this Order controls.

2. **Authorization to Use Cash Collateral.** Subject to the terms and conditions of this Order, the Debtor is authorized to use Cash Collateral solely to pay the ordinary and necessary operating expenses of its business set forth in the budget attached hereto as **Exhibit A** (as it may be amended or supplemented in accordance with Paragraph 4 below, the "Budget"), and for no

other purpose. The Debtor's authority to use Cash Collateral under this Order commences upon entry of this Order and terminates upon the Termination Date (as defined in Paragraph 15 below); provided, however, that during any gap period between the hearing and the entry of this Order, Debtor is authorized to use Cash Collateral under the Interim Order.

3. **Budget Compliance; Permitted Variance.** The Debtor shall use Cash Collateral substantially in accordance with the Budget. The Debtor may exceed (i) any individual line item of the Budget by no more than twenty percent (20%) of the amount budgeted for that line item, and (ii) the aggregate of all disbursements set forth in the Budget by no more than ten percent (10%), in each case measured on a cumulative rolling monthly basis (the "Permitted Variance"). Notwithstanding the foregoing, (x) any unspent or unused amounts under any line item or the aggregate budget for any prior period shall automatically roll over and carry forward to increase the permitted expenditures for such line item or aggregate disbursements in subsequent periods, and (y) any variance resulting solely from the timing of a disbursement rather than a permanent over-expenditure shall not constitute a breach. Any disbursement in excess of the Permitted Variance (taking into account any rolled-over or carried-forward amounts), or any material disbursement for a purpose unrelated to the business operations contemplated by the Budget, requires the prior written consent of Truist (which may be given by counsel via electronic mail) or further order of this Court. No payment shall be made to any insider of the Debtor, whether as salary, distribution, expense reimbursement, loan repayment, or otherwise, except as expressly identified as such in the Budget or as otherwise permitted by separate order of this Court. No payment of professional fees or expenses shall be made except as set forth in the Budget and as allowed by order of this Court, including Order at Dkt. 57 regarding monthly compensation procedures (the "Compensation Procedures Order").

4. **Budget Updates.** Not later than seven (7) days prior to the expiration of the period covered by the then-operative Budget, the Debtor shall deliver to Truist, the United States Trustee, and any official committee a proposed replacement budget covering the succeeding **[thirteen (13)-week]** period. Any replacement budget shall become the Budget for purposes of this Order only upon the written approval of Truist (which may be given by counsel via electronic mail) or further order of this Court. If Truist does not approve a proposed replacement budget, the Debtor's authority to use Cash Collateral shall terminate upon expiration of the then-operative Budget absent further order of this Court, and the Debtor may seek relief from this Court on an expedited basis on not less than three (3) business days' notice to Truist.

5. **Adequate Protection Payments.** As adequate protection for the Debtor's use of Cash Collateral and for any diminution in the value of Truist's interest in the Prepetition Collateral, the Debtor shall pay to Truist the contractual payment amounts under the Loan Documents of (each, an "Adequate Protection Payment"), commencing with the July 2026 payments, and continuing on the **fifth (5th)** day of each month thereafter until the Termination Date. Each Adequate Protection Payment shall be made by wire transfer, auto draft or other immediately available funds to an account designated in writing by Truist. Adequate Protection Payments shall be applied to the Loan Obligations in accordance with the Prepetition Loan Documents. The acceptance of, and the application of, the Adequate Protection Payments is without prejudice to (i) the rights of Truist to assert that its claim is oversecured and entitled to interest, fees, costs, and charges under 11 U.S.C. § 506(b), (ii) the right of Truist to seek additional or different adequate protection, and (iii) the rights of any party in interest, subject to the Challenge Deadline, to contest the characterization or recharacterization of such payments.

6. **Replacement Liens.** As further adequate protection, and effective as of the Petition Date, Truist is hereby granted valid, binding, enforceable, and automatically perfected replacement liens on and security interests in (the "Replacement Liens") all property of the Debtor and its estate acquired on or after the Petition Date of the same type, kind, nature, character, and description as the Prepetition Collateral, including all post-petition accounts, health-care-insurance receivables, payment intangibles, general intangibles, government and third-party payor reimbursement rights, deposit accounts, inventory, equipment, and all proceeds, products, rents, and profits thereof, whether now existing or hereafter arising, to the fullest extent permitted by 11 U.S.C. §§ 361, 363, and 552(b). The Replacement Liens shall be effective to the extent of any diminution in the value of Truist's interest in the Prepetition Collateral from and after the Petition Date and shall have the same validity, extent, and priority as Truist's liens on the Prepetition Collateral held as of the Petition Date. Nothing in this Order shall be deemed to grant Truist a lien on any asset in which it did not hold a valid, perfected, enforceable, and non-avoidable lien as of the Petition Date.

7. **Section 507(b) Claim.** To the extent the adequate protection granted in this Order proves insufficient to protect Truist against the diminution in value of its interest in the Prepetition Collateral, Truist is granted an allowed superpriority administrative expense claim under 11 U.S.C. § 507(b) to the extent of such diminution, with priority over all other administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) and 507(b).

8. **Automatic Perfection.** The Replacement Liens shall be valid, binding, enforceable, and fully perfected as of the date of entry of this Order without the necessity of executing, filing, or recording any financing statement, security agreement, mortgage, deed to secure debt, control agreement, or other instrument. Truist may, in its sole discretion, file such documents as it deems appropriate to evidence the Replacement Liens, and the Debtor shall

cooperate in connection therewith; any such filing shall be deemed to have been made as of the Petition Date.

9. **Reporting Requirements.** The Debtor shall deliver to counsel for Truist, the United States Trustee, and any official committee the following:

a. Budget-to-Actual Report. Within fifteen (15) days after the end of each calendar month, a budget-to-actual variance report for such month and on a cumulative basis from the date of entry of this Order, presented in the line-item format of the Budget, together with a written explanation of each variance in excess of the Permitted Variance.

b. Accounts Receivable and Payable. Within fifteen (15) days after the end of each calendar month, an aged accounts receivable report (by payor and aging category) and an aged accounts payable report as of the last day of such month.

c. Cash Receipts and Disbursements. On or before Wednesday of each week, a report of actual cash receipts and disbursements for the preceding week.

d. Monthly Operating Reports. Contemporaneously with filing, a copy of each monthly operating report and each other report required by the Bankruptcy Rules, the United States Trustee, or order of this Court shall be deemed to have been provided to counsel of record for Truist in this bankruptcy case via CM/ECF upon its filing.

e. Bank Statements. Within five (5) business days after receipt, copies of monthly statements for each of the Debtor’s bank accounts.

f. Insurance. Within ten (10) days after entry of this Order, and thereafter promptly upon renewal or upon request, certificates of insurance evidencing the coverage required by Paragraph 12 below, naming Truist as loss payee and additional insured as its interests appear.

g. Other Information. Promptly upon reasonable written request, such other financial and operational information as Truist may reasonably request for the purpose of evaluating its collateral and the Debtor's compliance with this Order.

10. **Cash Management**. The Debtor shall deposit all cash, checks, credit card settlements, payor remittances, and other cash items received from the operation of its business into its debtor-in-possession accounts maintained at Truist and shall make all disbursements from such accounts. The Debtor shall not commingle Cash Collateral with any funds that do not constitute Cash Collateral and shall segregate and separately account for any non-Cash Collateral receipts. The Debtor shall not open any additional deposit, investment, or operating account without prior written notice to Truist.

11. **Insurance, Taxes, and Maintenance.** The Debtor shall (i) maintain casualty, liability, and business interruption insurance on the Prepetition Collateral and the post-petition collateral in amounts and with carriers consistent with prepetition practice and as required by the Prepetition Loan Documents, naming Truist as loss payee and additional insured as its interests appear; (ii) pay when due all post-petition taxes, including all payroll and trust fund taxes, and provide proof of payment upon request; and (iii) maintain, preserve, repair, and protect the collateral in good working order and condition.

12. **Negative Covenants.** Without the prior written consent of Truist or further order of this Court, the Debtor shall not: (i) sell, lease, transfer, assign, or otherwise dispose of any

collateral outside the ordinary course of business; (ii) grant, create, incur, or suffer to exist any lien, security interest, or encumbrance on any collateral, or incur any indebtedness secured by or having priority over the Replacement Liens or the Section 507(b) Claim; (iii) sell, factor, discount, or otherwise monetize any accounts or health-care-insurance receivables, or enter into any merchant cash advance or similar receivables-purchase transaction; (iv) make any payment or transfer to any insider or affiliate except as expressly set forth in the Budget; (v) compromise or settle any account receivable outside the ordinary course of business; or (vi) use Cash Collateral to investigate, assert, prosecute, or join in any claim, objection, or cause of action against Truist or any challenge to the Loan Obligations or Truist's liens.

13. **Access and Inspection.** Upon reasonable prior notice and during normal business hours, the Debtor shall permit Truist and its representatives, agents, consultants, and appraisers to inspect the collateral, the Debtor's premises, and the Debtor's books and records, and to discuss the Debtor's operations and financial condition with the Debtor's management and professionals.

14. **Termination Date.** The Debtor's authority to use Cash Collateral shall terminate on the earliest to occur of (the "**Termination Date**"): (i) the expiration of the period covered by the then-operative Budget without approval of a replacement budget in accordance with Paragraph 4; (ii) the effective date of a confirmed plan of reorganization; (iii) the conversion of this case to a case under Chapter 7 or the dismissal of this case; (iv) the appointment of a trustee or of an examiner with expanded powers; (v) the entry of an order granting Truist relief from the automatic stay with respect to any material portion of the collateral; (vi) the closing of a sale of all or substantially all of the Debtor's assets; (vii) the cessation of the Debtor's business operations; or (viii) the occurrence of an Event of Default that is not timely cured as provided in Paragraph 17 (with each of the above being a "Termination Event").

15. **Events of Default.** Each of the following constitutes an "Event of Default" under this Order: (i) the Debtor's failure to comply with any term, condition, or covenant of this Order, including the Budget limitations and the reporting obligations in Paragraph 10; (ii) the Debtor's use of Cash Collateral other than as authorized herein; (iii) the failure to make any Adequate Protection Payment when due; (iv) the cancellation, lapse, or non-renewal of any insurance required hereunder; (v) any representation made by the Debtor in the Motion or in any report delivered under this Order proving to have been materially false or misleading when made; (vi) the Debtor's failure to pay post-petition taxes when due; or (vii) the granting of any lien or superpriority claim that is senior to or *pari passu* with the Replacement Liens or the Section 507(b) Claim without Truist's written consent.

16. **Notice and Cure; Remedies.** Upon the occurrence of an Event of Default, Truist may serve a written notice of default (a "**Default Notice**") by electronic mail upon counsel for the Debtor, the United States Trustee, and any official committee, and shall file the Default Notice with the Court. The Debtor shall have five (5) business days from service of the Default Notice to cure the Event of Default (the "Cure Period"). If the Event of Default is not cured within the Cure Period, the Debtor's authority to use Cash Collateral shall terminate automatically, and Truist may seek any relief available under the Bankruptcy Code or applicable law, including relief from the automatic stay, on an expedited basis on not less than three (3) business days' notice. The Debtor may request an expedited hearing within the Cure Period solely to contest whether an Event of Default has occurred or been cured; the Debtor's authority to use Cash Collateral during the pendency of any such hearing shall be limited to those disbursements set forth in the Budget that are necessary to avoid immediate and irreparable harm to the estate, or as otherwise agreed by Truist in writing.

17. **No Surcharge; No Marshaling; Section 552(b).** Except to the extent of the Carve-Out, no costs or expenses of administration incurred in this case or any successor case shall be charged against Truist, the Prepetition Collateral, or the post-petition collateral under 11 U.S.C. § 506(c) or otherwise without Truist's prior written consent, and no such consent shall be implied from any action, inaction, or acquiescence of Truist. The doctrine of marshaling and the "equities of the case" exception under 11 U.S.C. § 552(b) shall not apply to Truist, the Prepetition Collateral, the Cash Collateral, or the Replacement Liens.

18. **Carve Out.** Subject to each limitation set forth in this Paragraph, Truist consents to the payment from Cash Collateral of (i) the fees and expenses of professionals retained by the Debtor on application under Sections 327 or 328 of the Bankruptcy Code and allowed by order of this Court under Sections 330 or 331 of the Bankruptcy Code (but with interim payment of such fees being permitted in accordance with and as limited by the Compensation Procedures Order) (the "Debtor's Professionals"), in an aggregate amount not to exceed the lesser of (a) $30,000.00 (or such greater amount authorized by Truist in its sole discretion under any modified or extended Budget) and (b) the aggregate amounts set forth for the Debtor's Professionals in the Budget, in each case for fees and expenses actually incurred on or after the Petition Date and before the Termination Date (the "Professionals Carve Out") and (ii) the unpaid fees payable to the United States Trustee and/or Clerk of this Court from the Petition Date up to the date of an uncured Termination Event under 28 U.S.C. § 1930, together with any interest due under 31 U.S.C. § 3717 (the "UST and Court Fees Carve Out" and, collectively with the Professionals Carve Out, the "Carve Out"). The amounts for the Debtor's Professionals contained in the Budget are not subject to the Permitted Variance. The amounts allocated to each of the Debtor's Professional's fees are wholly separate, with each such Debtor's Professional's allocation reserved for that Debtor's

Professional if approved by the Court (i.e., the total budgeted amount for all of the Debtor's Professionals shall not be split pro rata among the Debtor's Professionals if any one Debtor's Professional exceeds the amount budgeted for that Debtor's Professional). Notwithstanding the foregoing, the Debtor's Professionals shall first apply all retainers and advances held for the benefit of the Debtor, whether received from the Debtor or from any other person on the Debtor's behalf (including the $7,389.47 held in trust for the Debtor by Stone & Baxter, LLP), to any allowed fees and expenses before drawing any portion of the Carve Out for payment of such allowed fees and expenses. Notwithstanding anything to the contrary in this Order, the occurrence of a Termination Event, other than a Termination Event that occurs pursuant to Paragraph 14(viii) of this Order, shall (i) not impact or forfeit the Carve Out as to fees and expenses incurred before the Termination Date and (ii) shall not terminate the right of a beneficiary of the Carve Out to the Carve Out merely by reason of a Termination Event, other than a Termination Event that occurs pursuant to Paragraph 14(viii) of this Order, occurring prior to payment of the Carve Out. The Carve Out is subject to each of the following: (a) the Carve Out is funded solely from Cash Collateral and the proceeds of post-petition accounts and health-care-insurance receivables, and shall not attach to or be satisfied from the real property described in Paragraph 5 of this Order or any proceeds thereof, the Debtor's equipment, machinery, or vehicles or any proceeds thereof, or any insurance proceeds; (b) the Professionals Carve Out accrues at a rate not to exceed $7,500.00 per calendar month except for September which shall not exceed $15,000, prorated for any partial month, with unused amounts carrying forward; (c) before drawing on the Carve Out, the Debtor's Professionals shall exhaust all unencumbered funds of the estate, including the proceeds of any claim or cause of action that does not constitute Prepetition Collateral or post-petition collateral; (d) no amount is payable from the Carve Out for services in connection with (1) investigating, commencing,

asserting, prosecuting, or joining any claim, objection, adversary proceeding, or contested matter against Truist, including any challenge described in Paragraph 9 of this Order, (2) opposing any request by Truist for relief from the automatic stay or for the exercise of any right or remedy, (3) seeking authority to use Cash Collateral other than as authorized by this Order or to obtain credit secured by a lien equal or senior in priority to the Replacement Liens, or (4) representing any person other than the Debtor, including Allison B. Burkett and her estate in Case No. 26-51110-RMM and any non-debtor affiliate of the Debtor; (e) no amount may be paid from the Carve Out except as allowed by order of this Court or permitted by the Compensation Procedures Order, and any amount paid on an interim basis remains subject to disgorgement (as permitted by applicable law) to the extent not finally allowed; (f) the Carve Out is available only to the Debtor's Professionals and is not available to any committee, trustee, examiner, or other estate representative, or to the professionals of any of them, absent the written consent of Truist or further order of this Court entered on notice to Truist; (g) the Carve Out is not a lien on any collateral and does not prime the Replacement Liens or the Section 507(b) Claim except to the extent of amounts actually paid under this Paragraph; and (h) nothing in this Paragraph constitutes the consent of Truist to a surcharge under 11 U.S.C. § 506(c), to the use of Cash Collateral after the Termination Date, or to the payment of any fee or expense in excess of the Carve Out.

19. **Reservation of Rights.** Nothing in this Order shall (i) constitute a determination of the value of the Prepetition Collateral or of Truist's secured claim under 11 U.S.C. § 506(a); (ii) prejudice the right of Truist to seek additional, different, or further adequate protection, to seek relief from the automatic stay, to object to any plan or disclosure statement, or to assert any claim under 11 U.S.C. §§ 506(b), 507(a), or 507(b); (iii) constitute a waiver of any right or remedy of Truist under the Prepetition Loan Documents or applicable law, all of which are expressly

reserved; (iv) constitute a waiver, release, or impairment of any claim of Truist against any guarantor or other obligor, or of any lien on property of any person other than the Debtor; or (v) obligate Truist to extend any credit or make any advance to the Debtor. Truist's consent to the entry of this Order is limited to the terms hereof and shall not be deemed consent to any other use of its collateral.

20. **Binding Effect; Survival.** The provisions of this Order, including the Replacement Liens, the Section 507(b) Claim, the Debtor's stipulations (subject to Paragraph I), and the covenants and obligations of the Debtor, shall be binding upon and inure to the benefit of the Debtor, Truist, and their respective successors and assigns, including any trustee or other estate representative appointed in this case or in any successor case, and shall survive the entry of any order confirming a plan, converting this case, or dismissing this case. If any provision of this Order is hereafter modified, vacated, or stayed, such modification, vacatur, or stay shall not affect the validity, perfection, priority, or enforceability of any lien, claim, or priority granted or created hereunder and arising prior to the effective date of such modification, vacatur, or stay.

21. **Modification.** This Order may be modified only by further order of this Court after notice and a hearing, or by written stipulation of the Debtor and Truist filed with the Court; provided, however, that the Debtor and Truist may agree in writing (which may be by electronic mail between counsel) to modify the Budget, to extend the Termination Date, or to waive any Event of Default without further order of this Court.

22. **Immediate Effectiveness.** Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, this Order shall be effective and enforceable immediately upon entry, and the stay of any such rule is waived.

23. **Service.** Within three (3) business days after entry of this Order, the Debtor shall serve a copy of this Order on all parties specified in Bankruptcy Rule 4001(b)(1)(C), all parties requesting notice in this case, and all parties asserting an interest in the Cash Collateral, and shall promptly thereafter file a certificate of service.

24. **Retention of Jurisdiction.** This Court retains jurisdiction to interpret and enforce this Order and to hear and determine all matters arising from or related to the implementation of this Order.

**END OF DOCUMENT**

**Order prepared and submitted by:**

*/s/ David L. Bury, Jr.*
David L. Bury, Jr.
Georgia Bar No. 133066
Stone & Baxter, LLP
577 Third Street
Macon, Georgia 31201
478) 750-9898; (478) 750-9899 (fax)
dbury@stoneandbaxter.com

**No opposition:**

*/s/ Jason D. Wyman (by DLB w/ express permission)*
Jason D. Wyman, Esq.
Georgia Bar No. 871980
Womble Bond Dickinson (US) LLP
550 South Main Street
Greenville, SC 29601
(864) 255-5421 | jason.wyman@wbd-us.com
*Counsel for Truist Bank*

**EXHIBIT A**

**Budget**

**MGVSC CASH COLLATERAL BUDGET**

| Sources | Sept | Oct | Nov |
|---|---|---|---|
| Beginning Cash | $22,000 | $14,219 | $13,643 |
| Sales/Collection | $84,520 | $84,520 | $84,520 |
| Flamengo Medical Services | $3,012 | $3,012 | $3,012 |
| **Total** | **$87,532** | **$87,532** | **$87,532** |
| | | | |
| **Uses** | | | |
| Payroll/Taxes | $25,486 | $25,486 | $25,486 |
| Accounting | $1,775 | $1,775 | $1,775 |
| Insurance | $1,297 | $1,297 | $1,297 |
| Medical Supplies | $22,940 | $22,940 | $22,940 |
| Other Supplies | $400 | $400 | $400 |
| Insurance (Malpractice) | $6,001 | $6,001 | $6,001 |
| Billing | $5,096 | $5,096 | $5,096 |
| IT | $2,140 | $2,140 | $2,140 |
| Maintenance | $350 | $350 | $350 |
| Utilities | $1,528 | $1,528 | $1,528 |
| Waste | $0 | $0 | $0 |
| EMR | $1,653 | $1,653 | $1,653 |
| Vehicles | $1,155 | $1,155 | $1,155 |
| Bank Fees | $0 | $0 | $0 |
| Licenses | $0 | $0 | $0 |
| Rent | $7,000 | $7,000 | $7,000 |
| Dues | $0 | $0 | $0 |
| Postage | $100 | $100 | $100 |
| **Total** | **$76,921** | **$76,921** | **$76,921** |
| **Cash Available for Ch. 11** | **$32,611** | **$24,830** | **$24,254** |
| | | | |
| **Restructuring Expenses** | | | |
| Adequate Protection | $3,012 | $3,012 | $3,012 |
| Stone & Baxter | $15,000 | $7,500 | $7,500 |
| UST Fees | $380 | $675 | $675 |
| **Total Restructuring Expenses** | **$18,392** | **$11,187** | **$11,187** |
| | | | |
| **Ending Cash** | **$14,219** | **$13,643** | **$13,066** |

United States Bankruptcy Court
Middle District of Georgia

In re: Case No. 26-51113-RMM
Middle Georgia Vascular Surgery Center L Chapter 11
Debtor

# CERTIFICATE OF NOTICE

District/off: 113G-5 User: auto Page 1 of 4
Date Rcvd: Aug 27, 2026 Form ID: pdfntc Total Noticed: 89

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ^ | Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036. |
| # | Addresses marked '#' were identified by the USPS National Change of Address system as requiring an update. While the notice was still deliverable, the notice recipient was advised to update its address with the court immediately. |
| ## | Addresses marked '##' were identified by the USPS National Change of Address system as undeliverable. Notices will no longer be delivered by the USPS to these addresses; therefore, they have been bypassed. The debtor's attorney or pro se debtor was advised that the specified notice was undeliverable. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 29, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Middle Georgia Vascular Surgery Center L.L.C., 1025 N. Houston Road, Warner Robins, GA 31093-1505 |
| cr | + | Advanced Wound Care, LLC, 550 W Baseline Rd, Suite 102-416, Mesa, AZ 85210-6031 |
| 13080883 | | Abbott Laboratories, 22400 Network Pl., Chicago IL 60673-1224 |
| 13080884 | + | Acutane, Inc., 3800 N Lamar Blvd - Ste. 220, Austin TX 78756-0003 |
| 13080887 | | Advanced Wound Care LLC, a/k/a WoundGenex, 550 W Baseline Rd. - Ste. 102-416, Mesa AZ 85210-6031 |
| 13089174 | + | Advanced Wound Care, LLC d/b/a WoundGenex, c/o Clinton Mikel, Esq., 32000 Northwestern Hwy, Suite 240, Farmington Hills, MI 48334-1569 |
| 13080890 | + | Alexa Internet, 80 State St., Albany NY 12207-2541 |
| 13080891 | + | Allison B. Burkett, 207 Twisted Laurel Lane, Bonaire GA 31005-4233 |
| 13080892 | + | Allison Burkett, 207 Twisted Laurel Lane, Bonaire GA 31005-4233 |
| 13080894 | + | American Vascular Associates, 3001 Palm Harbor Blvd - Ste. A, Palm Harbor FL 34683-1930 |
| 13080895 | + | Ameris Bank, 575 Anton Blvd. FL 12, Costa Mesa CA 92626-7169 |
| 13081787 | + | Ameris Bank, through its division Balboa Capital C, In Care of (c/o) David A. Garland, Moore, Clarke, DuVall & Rodgers, P.C., 2829 Old Dawson Road, Suite 100, Albany, Georgia 31707-1403 |
| 13081498 | + | Ameris Bank, through its division Balboa Capital C, In Care of (c/o) Stephan A. Ray, Moore, Clarke, DuVall & Rodgers, P.C., 2829 Old Dawson Road, Suite 100, Albany, Georgia 31707-1403 |
| 13080896 | | Arrow Exterminators, P.O. Box 26178, Macon GA 31221-6178 |
| 13080897 | | Balboa Capital Corporation, P.O. Box 844803, Los Angeles CA 90084-4803 |
| 13080899 | | Boston Scientific Corporation, P.O. Box 786205, Philadelphia PA 19178-6205 |
| 13080901 | + | Canva US, Inc., 3212 E. Cesar Chavez St., Building 1 -Suite 1300, Austin TX 78702-4938 |
| 13080902 | | Central Georgia Health Network, 777 Hemlock St., Msc 98, Macon GA 31201-2102 |
| 13080903 | | Choice Insurance Services, 615 S. Houston Lake Rd. - Ste. 100, Warner Robins GA 31088-9503 |
| 13080904 | | City of Warner Robins, P.O. Box 8659, Warner Robins GA 31095-8659 |
| 13080905 | | Cloudable LLC, P.O. Box 911, Fortson GA 31808-0911 |
| 13080906 | | Cordis US Corp, P.O. Box 748602, Atlanta GA 30374-8602 |
| 13080907 | | Core Sound Imaging Inc, 5510 Six Forks Rd. - Ste. 200, Raleigh NC 27609-8620 |
| 13080908 | + | Courtney Ates, 3664 Bayne Street, Macon GA 31204-2683 |
| 13080909 | | Cox Communications, Inc, P.O. Box 919367, Dallas TX 75391-9367 |
| 13080913 | | Every Season Landscaping, 125 Autumn Woods Dr., Warner Robins GA 31088-6711 |
| 13080915 | + | Flamingo Medical Services, LLC, 1025 N. Houston Rd., Warner Robins GA 31093-1505 |
| 13080916 | | Flint Electric Membership Corporation, P.O. Box 70878, Charlotte NC 28272-0878 |
| 13107905 | | Georgia Department of Community Health, c/o Patrick Long, E Twr, 18th Flr, 2 MLK Jr.Dr. SE, Atlanta, GA 30334 |
| 13080918 | + | Global Payments Inc., 3550 Lenox Road, Atlanta GA 30326-4334 |
| 13080919 | + | Globe Life Inc., 3700 South Stonebridge Dr., McKinney TX 75070-5934 |
| 13080920 | + | Houston County Tax Commissioner, c/o Hon. Mark Kushinka, Tax Commissioner, 202 Carl Vinson Parkway, Warner Robins GA 31088-5897 |
| 13080921 | | Imaging Physics LLC, 227 Sandy Springs Pl. - Ste. D-300, Sandy Springs GA 30328-5918 |
| 13080922 | + | Inbox Health Corp, 470 James St. - Ste. 001, New Haven CT 06513-3175 |
| 13080923 | | Integris Assurance Company, P.O. Box 875, Brattleboro VT 05302-0875 |
| 13080925 | + | Intuit Inc., 2632 Marine Way, MS2700, Mountain View CA 94043-1126 |
| 13080926 | + | Jennifer Nash, 115 Thomas Ct, Kathleen GA 31047-2206 |
| 13080938 | #+ | MMP Capital, LLC, 19 Engineers Ln., Farmingdale NY 11735-1207 |

| | | |
|---|---|---|
| 13080928 | + | Madison Williams, 101 Bella Ct, Kathleen GA 31047-2957 |
| 13080929 | + | Martin Snow, LLP, 4025 Vineville Ave., Macon GA 31210-5039 |
| 13080930 | + | Mason Accounting & Consulting Services, 888 SE 3rd Ave. - Ste. 102, Ft Lauderdale FL 33316-1167 |
| 13080931 | | Massachusetts Mutual Life Insurance Comp, Box 371368, Pittsburgh PA 15250-7368 |
| 13080932 | | McKessen Medical Surgical, P.O. Box 660266, Dallas TX 75266-0266 |
| 13080933 | | Medline Industries, LP, Dept Ch 14400, Palatine IL 60055-4400 |
| 13080934 | | Medtronic USA Inc, P.O. Box 409201, Atlanta GA 30384-9201 |
| 13080935 | | Merit Medical Systems, Inc, P.O. Box 204842, Dallas TX 75320-4842 |
| 13080936 | + | Michelle Bloodworth, 403 Wrasling Way, Bonaire GA 31005-3237 |
| 13080939 | + | Net2Phone Global Services, LLP, 520 Broad St., Newark NJ 07102-3195 |
| 13080940 | + | New Lane Finance, 123 S. Broad St., 17th Floor, Philadelphia PA 19109-1032 |
| 13080942 | + | Organogenesis Inc., 150 Dan Rd., Canton MA 02021-2820 |
| 13080943 | | Philips Healthcare, P.O. Box 100355, Atlanta GA 30384-0355 |
| 13080945 | + | Purcor Pest Solutions, P.O. Box 600607, Jacksonville FL 32260-0607 |
| 13080946 | #+ | Reliant Capital Group, 6 Executive Circle - Ste. 250, Irvine CA 92614-6732 |
| 13080947 | #+ | Robert Zanders, 76 Duke Ln., Kathleen GA 31047-3201 |
| 13080948 | + | Robins Regional Chamber, 1228 Watson Blvd., Warner Robins GA 31093-3428 |
| 13080949 | + | Shred Monster, P.O. Box 26148, Macon GA 31221-6148 |
| 13080950 | + | Southeast Physics Associates, 3010 Gadsden St., Alpharetta GA 30022-1592 |
| 13080951 | | Stearns Bank Equipment Finance, P.O. Box 327, Albany MN 56307-0327 |
| 13080954 | + | Taylor Phagan, 101 Azalea Ave, Bonaire GA 31005-3471 |
| 13099834 | + | Truist Bank, c/o Jason D. Wyman, Esq., Womble Bond Dickinson (US) LLP, 550 South Main Street, Suite 400, Greenville, SC 29601-2541 |
| 13106353 | + | UnitedHealthcare Insurance Company, UHC Bankruptcy Mail, PO Box 740003, Atlanta, GA 30374-0003 |
| 13080958 | + | Waystar, Inc., 715 Peachtree St. NE - Ste. 900, Atlanta GA 30308-3698 |
| 13080959 | | Xerox Business Solutions, P.O. Box 932893, Atlanta GA 31193-2893 |
| 13080960 | #+ | Zelis Healthcare, LLC, 2 Crossroads Dr., Bedminster NJ 07921-1564 |

TOTAL: 64

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| cr | + | Email/PDF: acg.acg.ebn@aisinfo.com | Aug 27 2026 17:36:57 | BMW Bank of North America, c/o AIS Portfolio Servi, 4515 N Santa Fe Ave. Dept. APS, Oklahoma City, OK 73118-7901 |
| 13080886 | | Email/Text: amscbankruptcy@adt.com | Aug 27 2026 17:33:00 | ADT Security, P.O. Box 371490, Pittsburgh PA 15250-7490 |
| 13080885 | + | Email/Text: CSCBNC@cscglobal.com | Aug 27 2026 17:32:00 | Adobe, Inc., c/o Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808-1674 |
| 13080888 | | Email/Text: mgeorge@aflac.com | Aug 27 2026 17:32:00 | Aflac Incorporated, 1932 Wynnton Rd., Columbus GA 31999-0001 |
| 13080889 | ^ | MEBN | Aug 27 2026 17:27:19 | Airgas USA, LLC, P.O. Box 734672, Dallas TX 75373-4672 |
| 13080893 | + | Email/Text: bankruptcybnc@amazon.com | Aug 27 2026 17:33:00 | Amazon.com, Inc., P.O. Box 81226, Seattle WA 98108-1300 |
| 13083947 | + | Email/PDF: acg.acg.ebn@aisinfo.com | Aug 27 2026 17:37:00 | BMW Bank of North America, AIS Portfolio Services, LLC, 4515 N Santa Fe Ave. Dept. APS, Oklahoma City, OK 73118-7901 |
| 13080898 | | Email/PDF: acg.bmw.ebn@aisinfo.com | Aug 27 2026 17:37:04 | BMW Bank of North America, P.O. Box 78066, Phoenix AZ 85062-8066 |
| 13088198 | + | Email/PDF: acg.acg.ebn@aisinfo.com | Aug 27 2026 17:36:57 | BMW Bank of North America c/o AIS Portfolio Servic, 4515 N. Santa Fe Ave. Dept. APS, Oklahoma City, OK 73118-7901 |
| 13080900 | ^ | MEBN | Aug 27 2026 17:27:49 | C T Corporation System, o/b/o Middle Georgia Vascular, 330 N. Brand Blvd., Suite 700, Attn. SPRS, Glendale CA 91203-2336 |
| 13080911 | + | Email/Text: mrdiscen@discover.com | | |

| | | | | |
|---|---|---|---|---|
| | | | Aug 27 2026 17:32:00 | Discover Credit Card, P.O. Box 30939, Salt Lake City UT 84130-0939 |
| 13080912 | | Email/Text: bankruptcy@eclinicalworks.com | Aug 27 2026 17:32:00 | EClinicalWorks, LLC, 2 Technology Dr., Westborough MA 01581-1727 |
| 13080914 | | Email/Text: info@fpsga.com | Aug 27 2026 17:32:00 | Fire Protection Services, LLC, 2030 Powers Ferry Rd. - Ste. 100, Atlanta GA 30339 |
| 13080917 | | Email/Text: brnotices@dor.ga.gov | Aug 27 2026 17:32:00 | Georgia Department of Revenue, Compliance Division, ARCS - Bankruptcy, 1800 Century BLVD NE, Suite 9100, Atlanta GA 30345 |
| 13080924 | | Email/Text: sbse.cio.bnc.mail@irs.gov | Aug 27 2026 17:32:00 | Internal Revenue Service, Centralized Insolvency Operation, P.O. Box 7346, Philadelphia PA 19101-7346 |
| 13080927 | | Email/Text: eakesc@labcorp.com | Aug 27 2026 17:32:00 | LabCorp, 531 South Spring Street Burlington, Burlington NC 27215 |
| 13080937 | + | Email/Text: celabnc@microsoft.com | Aug 27 2026 17:32:00 | Microsoft Corporation, One Microsoft Way, Redmond WA 98052-8300 |
| 13080941 | + | Email/Text: emiller@northmillef.com | Aug 27 2026 17:32:00 | North Mill Equipment Finance LLC, 601 Merrit 7 - Ste. 5, Norwalk CT 06851-1097 |
| 13082530 | + | Email/Text: USTP.REGION21.MC.ECF@USDOJ.GOV | Aug 27 2026 17:33:00 | Office of U.S. Trustee, c/o Robert G. Fenimore, Trial Attorney, 440 MLK Jr. Blvd Ste 302, Macon, GA 31201-7987 |
| 13080944 | + | Email/Text: litigation.recoverybkmailbox@dllgroup.com | Aug 27 2026 17:32:00 | Philips Medical Capital, LLC, 1111 Old Eagle School Road, Wayne PA 19087-1453 |
| 13080953 | | Email/Text: BankruptcyNotice@Stericycle.com | Aug 27 2026 17:32:00 | Stericycle, Inc., 2355 Waukegan Rd., Bannockbum IL 60015 |
| 13080952 | | Email/Text: BankruptcyNotice@Stericycle.com | Aug 27 2026 17:32:00 | Stericycle Inc, 28883 Network Pl., Chicago IL 60673-1288 |
| 13080955 | | Email/Text: bankruptcy@bbandt.com | Aug 27 2026 17:32:00 | Truist Financial Corporation, P.O. Box 580050, Charlotte NC 28258-0050 |
| 13080956 | | Email/Text: bankruptcy@bbandt.com | Aug 27 2026 17:32:00 | Truist Financial Corporation, P.O. Box 791622, Baltimore MD 21279-1622 |
| 13080957 | | Email/Text: wfmelectronicbankruptcynotifications@verizonwireless.com | Aug 27 2026 17:32:00 | Verizon Wireless, P.O. Box 408, Newark NJ 07101-0408 |

TOTAL: 25

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| 13080910 | ##+ | Decision HR, 11101 Roosevelt Blvd. N, Saint Petersburg FL 33716-2334 |

TOTAL: 0 Undeliverable, 0 Duplicate, 1 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 29, 2026 Signature: /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 27, 2026 at the address(es) listed below:**

| Name | Email Address |
| --- | --- |
| Clinton R. Mikel | on behalf of Creditor Advanced Wound Care LLC cmikel@thehlp.com |
| David A. Garland | on behalf of Creditor Ameris Bank through its division Balboa Capital Corporation dgarland@mcdr-law.com, tlansman@mcdr-law.com |
| David L. Bury, Jr. | on behalf of Debtor Middle Georgia Vascular Surgery Center L.L.C. dbury@stoneandbaxter.com lchapman@stoneandbaxter.com;mwade@stoneandbaxter.com;tnorton@stoneandbaxter.com |
| Jason Wyman | on behalf of Creditor Truist Bank jason.wyman@wbd-us.com |
| Robert G. Fenimore | on behalf of U.S. Trustee U.S. Trustee - MAC robert.g.fenimore@usdoj.gov Ustp.region21.mc.ecf@usdoj.gov |
| Stephan Alan Ray | on behalf of Creditor Ameris Bank through its division Balboa Capital Corporation sray@mcdr-law.com, tlansman@mcdr-law.com |
| Tate Crymes | on behalf of Debtor Middle Georgia Vascular Surgery Center L.L.C. tcrymes@stoneandbaxter.com lchapman@stoneandbaxter.com;mwade@stoneandbaxter.com |
| U.S. Trustee - MAC | Ustp.region21.mc.ecf@usdoj.gov |

TOTAL: 8